Charles Dennis EASLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 50288.

Court of Criminal Appeals of Texas.

Nov. 12, 1975.

Milton E. Douglass, Jr., Wichita Falls, for appellant.

Joe Max Shelton, City Atty. and Dan McMulty, Asst. City Atty., Sherman, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for murder with malice. Trial was before a jury and the jury assessed punishment at one hundred (100) years' imprisonment. The offense occurred on April 1, 1970 and appellant's first conviction for this offense was reversed by this Court on March 14, 1973. *Easley v. State*, Tex.Cr.App., 493 S.W.2d 199. This appeal is from the conviction which resulted from appellant's second trial, which commenced on March 18, 1974, following a change of venue.

Appellant challenges the sufficiency of the evidence to support this conviction. Since we have determined that relief must be accorded on this ground, a detailed discussion of the evidence follows.

At the time of her death, Laurie Stevens was in the fifth grade at Lamar Elementary School in Denison. At 3:30 p. m. on April 1, 1970, she left school on foot, never to be seen alive again. After an extensive search, her body was found three days later lying face down in a ditch fifteen (15) feet from Randell Road in a rural part of Grayson County. Except for her shoes and socks, she was nude and she had been shot six times. Five .22 calibre slugs were recovered from the victim's body and a sixth was found in the dirt underneath the body. No spent cartridge casings were found at the site, and it could not be determined whether the murder weapon was a rifle or pistol, revolver or automatic.

Suspicion focused on the appellant and he was arrested on an unrelated charge of theft of gasoline on April 8, 1970. At the time of his arrest, appellant was driving a brown Pontiac. A .22 calibre six-shooter pistol was found on appellant's person, along with two boxes of .22 calibre shells.

Much of the testimony at trial concerned appellant's presence in the victim's neighborhood in the weeks prior to her death. Bennie Akers testified that he saw appellant driving a red 1968 Chevrolet with a dented right front fender in deceased's neighborhood about two to three weeks before her disappearance. About a week prior to that, he and Charles Kelly saw the same car involved in a collision in the neighborhood. On the morning of deceased's disappearance, appellant was seen in the red car asking directions to Travis Street of two boys in the neighborhood, Roy Lee Akers and Donnel Kelly. Kelly also testified that he would see appellant at least once a day three to four weeks prior to April 1, driving in deceased's neighborhood, but never on a Saturday or Sunday. Annie Mae Akers stated that she saw appellant pushing a motorcycle down the alley behind her house on three occasions "something like" "fairly close" to two weeks prior to April 1. On two occasions prior to April 1, Douglas Childs saw appellant in his red car near Lamar Elementary School. Deputy Sheriff Gene Lambert testified that appellant's house was 1.3 and 1.5 miles from the school and the victim's house, respectively.

After appellant's arrest, a search of his house was conducted by Grayson County authorities. Appellant had lived with his parents at 2407 Travis Street but the family had moved in late March, 1970. Investigation revealed numerous bullet holes, bullets, and shell casings around a shed at the back of the property, indicating someone had been doing a lot of target practice while the Easleys lived there. Officer Lambert found about six boxes (approximately 300 shells) of .22 calibre hulls in the area. It was not

possible to determine if the shooting had been done with a rifle or a revolver.

Ballistics experts Roger Sedbury of the Texas Department of Public Safety and Charles M. Hoffman of the Treasury Department's Bureau of Alcohol, Tobacco and Firearms testified at length at the trial. Sedbury said that the slugs recovered from the victim's body could not be matched to the pistol recovered from appellant at the time of his arrest. He testified that the tests were inconclusive. Hoffman echoed Sedbury's conclusions. When finally asked, "But was there enough similarity to produce a conclusion that it could have been the weapon?" he stated, "I don't feel any determination could have been made, sir, as to whether it was or not."

Hoffman went on, however, to relate the results of some chemical comparison tests he performed on the slugs found in the body, those recovered from appellant at the time of his arrest, and those found at the house on Travis Street. These tests reveal differences in the chemical composition and trace metals of bullets from different manufacturers, and even between different "batches" of bullets made by the same manufacturer. On the basis of these tests, he was able to form no opinion about the bullets found on appellant's person, but he was able to conclude that there was a "high probability" that two of the bullets recovered at the Travis Street house came from the same batch as those found in the victim's body.

Hoffman also testified that he had attempted to compare samples of soil from the fender of the red Chevrolet, and hair, leaves, paper and debris vacuumed from within the car with samples of soil, blood, and leaves from the Randell Road ditch and hair and clothing from the victim's body. He stated that absolutely no conclusive comparisons could be made between these items.

Two witnesses suggested appellant may have been in the area where the body was found at the time of the victim's disappearance. Jack Harris testified that he observed appellant driving on Randell Road about 6:00 p. m. on April 1, in a red Chevrolet with a dented front fender. At 7:45 a. m. the next day, Deputy Sheriff Billy Purdom observed the same car traveling south on Highway 75A. The license number, JTW 499, indicated that the car was registered to appellant's brother, James. Purdom noted this car some distance south of the intersection of Highway 75A and Randell Road, but he would not have been able to determine if the car had turned off Randell Road. As for the driver of the red Chevrolet, Purdom testified that it "possibly could be" appellant, and that he looked "similar" to appellant at the time of his arrest six days later, although he (Purdom) did not observe the driver that closely.

It will be noted that this conviction is based on circumstantial evidence. The test for evaluating the sufficiency of the evidence to uphold such a conviction was stated in *Indo v. State*, 502 S.W.2d 166 (Tex.Cr. App.1973) as follows:

> "This Court has long adhered to the rule that a conviction on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting to only a strong suspicion or mere probability is insufficient. *Flores v. State*, 489 S.W.2d 901, 902 (Tex.Cr.App.1973) and cases therein cited."

See also 24 Tex.Jur.2d, Evidence, Secs. 729 and 742, pp. 403 and 422; and *Greer v. State*, 437 S.W.2d 558 (Tex.Cr.App.1969).

■ The facts adduced in the case at bar cast barely more than a reasonable suspicion upon the appellant, and fall far short of showing his guilt to a moral certainty. The sum total of all the incriminating facts consisted only of (1) appellant's suspicious presence around the victim's neighborhood in the weeks prior to the killing, (2) a chemical similarity between the bullets removed from the deceased's body and two of the bullets found on the premises where

appellant's family had lived, and (3) one eyewitness identification of appellant and one eyewitness identification of his car on the roads in the vicinity of the scene of the crime shortly after the victim's disappearance. Contrast these facts with the inconclusive ballistics tests, the absence of a chemical similarity between the bullets found on appellant's person and those removed from deceased's body, the inconsistency of the debris recovered from appellant's automobile and that recovered from the scene of the crime, and the absence of any ballistic or chemical similarities between the vast majority of the bullets found at the Travis Street house and any of the other bullets involved in the case. Nor is the sighting of appellant or his car in the Randell Road vicinity of much significance, in view of the amount of activity in the area and the fact that, at one time, he was seen only on a U. S. Highway. Far from excluding all other reasonable hypotheses except the appellant's guilt, the evidence adduced leaves it possible for anyone to have committed this crime, at least anyone who may have fired two bullets on the back of the Easley property during the period of their residency there.

*Creel v. State,* 493 S.W.2d 814 (Tex.Cr. App.1973) involved a murder similar to that in the case at bar, although the evidence there was held sufficient to support the conviction. Creel was charged with abducting a ten-year-old girl as she walked home from school, raping and strangling her, and depositing her body in a culvert in rural Taylor County, where it was found the next day. As in the instant case, witnesses reported seeing Creel near the victim's home and school. In contrast to this case, however, Creel was reported to have asked some of the victim's classmates about her on the very day of her disappearance. In addition, another witness told of seeing Creel's car parked with what appeared to be a man and a young girl in the front seat. More witnesses placed Creel from one to one and a half miles from the culvert three hours after the girl's disappearance. One witness even testified to seeing the victim's coat on the front seat of Creel's car as he was parked by the side of a road a mile from the culvert where the girl's body was found. In addition, blood samples, haygrazer (a feeding substance), dog hair, and semen all connected defendant to the body of the deceased child. It will be seen that *Creel* involved a very thorough prosecution, and that the evidence in the instant case falls far short of that found sufficient to support the conviction in *Creel.*

■ This evidence raises a strong suspicion that the appellant is guilty. This Court has the duty, however, of insuring that no one is convicted of a crime except upon proof beyond a reasonable doubt and, in a circumstantial evidence case, upon proof excluding all other hypotheses except appellant's guilt. For the failure of the evidence to meet the required burden of proof, the judgment is reversed and the cause remanded.

DOUGLAS, J., not participating.