Samuel B. TROSTLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 58369.

Court of Criminal Appeals of Texas,
Panel No. 2.

Dec. 12, 1979.

Rehearing En Banc Denied Jan. 16, 1980.

Percy Foreman and Dick DeGuerin, on appeal only, Houston, for appellant.

Carol S. Vance, Dist. Atty., Michael Kuhn and Charles C. Cate, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for murder. After the jury found appellant guilty, the court assessed punishment at fifty years.

In his first ground of error, appellant challenges the sufficiency of the evidence to support the conviction. The State relied on circumstantial evidence.

Peter Dzwonczyk testified that he and his wife went to the home of the deceased, Fannie Kimball, at 5:30 p. m. on October 26, 1976. He stated that the deceased ran a boarding house on Austin St. in Houston. The deceased, seventy-three years old at the time of her death, had five tenants upstairs and a garage apartment at the rear of the house. The deceased lived in the downstairs portion of the house. Appellant lived upstairs as a tenant.

Dzwonczyk related that he knocked on the door of the home and no one answered. However, he was able to hear moaning sounds from the kitchen area. Once he gained access to the house, he found the deceased lying in a pool. of blood on the floor of the kitchen. Dzwonczyk stated that blood was splattered on the walls of the kitchen and that the left side of the deceased's head was "smashed in." With the help of a tenant, Clifton Harris, the police and an ambulance were summoned to the scene.

The deceased was taken to Ben Taub Hospital where she eventually died on November 2, 1976, having never regained consciousness. The parties stipulated that the deceased died as a result of blunt trauma to the head. Dr. Joseph Jachimczyk, Chief Medical Examiner for Harris County, testi-

fied that the injuries inflicted on the deceased were consistent with having been beaten several times on the head with a hammer.

Anna Lorenz testified that she lived next door to the deceased. She stated that appellant and the deceased had reached an agreement whereby in exchange for repair and remodeling work, appellant was given room and board.

Lorenz stated that on the morning of the offense, she was at the deceased's home when appellant came into the room and told the deceased that she was a "liar, thief, and hypocrite."

Birdie Guy testified that she worked as a maid for the deceased from 10:00 a. m. until 5:00 p. m. on the day of the offense. Guy stated that while she was at work that day, she did not see any of the tenants. She stated that she did not go into appellant's room on the day of the offense. The last time Guy saw the deceased, she was sitting in a chair shelling pecans. It was later shown that the deceased would often use a hammer whenever she shelled pecans.

Officer T. R. Cunningham, of the Houston Police Department, testified that he arrived at the deceased's home at 6:10 p. m. He stated that approximately thirty minutes later, appellant came downstairs from his room and walked out the door without saying anything to the police officers in the house. Cunningham then told appellant that he would have to stay at the house until the investigation had been completed.

Appellant then came back into the house and sat down at the kitchen table. Cunningham noticed what he described as two fresh scratches on appellant's face which were still bleeding. Appellant was dressed in fresh clothing and appeared to have recently shaved and showered. Appellant was wearing a wig.

Cunningham then saw a hammer in a sink located in the kitchen. Water was running from the faucet onto the hammer. Officer M. L. Williams, of the Houston Police Department, testified that small pieces of what he thought to be human flesh were in the sink. He further stated that the hammer appeared to have blood on it and that a substance resembling watered down blood was running down the drain.

Approximately one and one half hours later, Officer J. H. Binford, of the Houston Police Department, obtained appellant's consent to search his room upstairs. Inside the room, Binford found two shirts which appeared to have blood smeared on them. He also found a pair of leather gloves, one of which was moist with a substance Binford believed to be blood.

The evidence gathered at the scene of the offense was then turned over to Robert Warkentin, a chemist employed by the Houston Police Department. Warkentin testified that he performed a modified benzidine test on the hammer, shirts, and gloves. The test result was positive for the presence of blood on these items. He further stated that hair was found on the hammer and one of the shirts. One of the hairs taken from the shirt had characteristics identical to a hair sample taken from the deceased.

Two days later, Warkentin accompanied officers to appellant's room. Inside the room, Warkentin found a pair of shoes which tested positive for the presence of blood. Warkentin stated that the substance on the shoes had dried and formed a crust along a crease in the shoe. He related that the fact that the crust was still intact at a flexing point for the shoe indicated that the shoes had not been worn since the substance dried on them. Evidence at trial established that appellant had been incarcerated in the Harris County Jail since the time of his arrest on October 26, 1977.

On December 1, 1977, Warkentin received two bed sheets which had been found in appellant's room by a woman who was helping with the estate of the deceased. Warkentin testified that a large smear of dried blood was found at one end of one of the sheets.

Appellant testified that he moved into the home of the deceased in June of 1976 after the deceased agreed to provide room

and board for him if he would do various repair and remodeling jobs around the house. In doing these remodeling jobs, appellant related that he would sometimes use the deceased's tools. He stated that he had been up in his room the entire day of the offense except for a brief trip to the store to call in sick for work. Appellant worked part-time as a cab driver for the Yellow Cab Company in Houston.

Appellant stated that when he was detained by Officer Cunningham, he had just finished shaving and had cut his face. He related that the blood on the shirts was the result of wiping his face off after he cut himself. Appellant explained that the gloves found in his room had grease on them. He further stated that the shoes which Warkentin had examined were often worn in the garage of Yellow Cab while he was at work.

Lastly, appellant denied having had an argument with the deceased in the presence of Lorenz. He related that he knew nothing about the manner in which the deceased had been murdered.

Robert Weir, a chemist, was called as a witness by appellant. Weir stated that he was familiar with the benzidine test which Warkentin had performed on the various items of physical evidence. Weir stated that in his opinion, the test was not conclusive for the presence of blood on an object. He related that substances such as lead oxide found in gasoline could cause a false reaction in the test and indicate the presence of blood.

On cross-examination, Weir stated that the modified benzidine test which Warkentin had used is approximately 30 percent more accurate than the standard test to which he was referring on direct examination. He further stated that he had never known of gasoline to dry and form a crust or flaky substance such as found on appellant's shoes. Appellant did not have Weir examine the physical evidence found in his room, thus, Weir could not state that Warkentin's opinion that the objects had blood on them was erroneous.

A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of guilt of the defendant. *Schershel v. State,* Tex.Cr.App., 575 S.W.2d 548; *Bryant v. State,* Tex.Cr. App., 574 S.W.2d 109. Thus, proof which amounts only to a strong suspicion or mere probability is insufficient. *Ford v. State,* Tex.Cr.App., 571 S.W.2d 924. However, every circumstantial evidence case must necessarily be tested by its own facts to determine the sufficiency of the evidence to support the conviction. *Earnhart v. State,* Tex.Cr.App., 575 S.W.2d 551.

Appellant maintains that based on the evidence, there is merely a possibility or suspicion that he committed the offense. He relies on *Stogsdill v. State,* Tex.Cr.App., 552 S.W.2d 481; *Flores v. State,* Tex.Cr. App., 551 S.W.2d 364; *Easley v. State,* Tex. Cr.App., 529 S.W.2d 522. In both *Stogsdill* and *Flores,* the Court found the evidence insufficient to support the convictions. In both cases, there was no showing that the defendants were at or near the scene where the crimes took place. In both cases, the defendants were never shown to have been in possession or near the murder weapons. In *Flores,* the State merely proved that the defendant was in possession of the deceased's car prior to and after his death. In *Stogsdill,* the State attempted to connect the defendant with the offense by tire track comparisons; however, those comparisons merely showed the tracks to be similar in nature. Likewise, in *Easley,* the defendant was not connected with the murder weapon. Nor was the defendant in *Easley* shown to have been at the scene where the victim was kidnapped on the day of the offense.

█ In the instant case, appellant testified that he was in the house at the time the deceased was killed. It was shown that appellant had a confrontation with the deceased the morning of her death.

Although appellant had lived in the home for four months and worked for the deceased, he merely walked out of the house without saying a word when several police

officers, news media, and ambulance attendants were in the house or front yard. He had recently showered following an offense which was shown to have splattered a great deal of blood during its commission. He had what were identified to be fresh scratch marks on the side of his face.

Results of a test on articles of clothing found in appellant's room were positive for the presence of blood. Although appellant explained the blood on his shirts and the cuts on his face, he could not explain the presence of blood on the sheets found in his room. He stated that he had never seen the sheets before.

The test run on appellant's shoes was positive for the presence of blood. Although appellant's chemist stated that the test may have given a false reaction because of gasoline on the shoes, he could not explain the crusty or flaky quality of the substance found on top of the shoe. Lastly, the glove found in appellant's room approximately two hours after the offense was moist with a substance which later tested positive for blood. Appellant testified that grease was on the glove.

Considering the record as a whole and viewing it in the light most favorable to the verdict, we find the circumstantial evidence sufficient to support the conviction. Appellant's first ground of error is overruled.

In his second ground of error, appellant contends that the trial court erred in admitting hearsay evidence. He maintains that statements made by the deceased to various witnesses concerning her intention to tell appellant to move on the day of the offense and her fear of appellant were inadmissible. The trial court ruled that such statements would be admissible if made to the witnesses by the deceased on the day of her death.

Anna Lorenz testified that after appellant called the deceased a "liar, thief, and hypocrite," the deceased said that she was going to tell appellant to move out of the house because she was dissatisfied with his work on the house. Birdie Guy, the deceased's maid, testified that the deceased had expressed her intention of telling appellant that he had to move.

Edna Porche testified that on the morning of the offense, she talked to the deceased. At that time, the deceased told her that appellant was working part-time as a cab driver and no longer doing work around her house. She told Porche that she was scared of appellant, but was going to ask him to move out that day.

Mildred Hurst testified that the deceased had been her sister-in-law. Hurst stated that on the afternoon of her death, the deceased told her that she was going to tell appellant to either start paying rent or to move out of the house.

■ Appellant's third through sixth grounds of error challenge the admissibility of the testimony given by witnesses Lorenz, Guy, Porche, and Hurst. He maintains that their testimony to the effect that the deceased intended to meet with appellant and tell him to move was hearsay. None of these statements were shown to have been made in the presence of appellant.

In Corbett v. State, Tex.Cr.App., 493 S.W.2d 940, the Court considered the admissibility of a statement made by the deceased to his wife on the day of the offense. The deceased's wife was allowed to testify over a hearsay objection that the deceased told her on the morning of his death that he was going to see the defendant in Freeport about some checks the defendant had written on the deceased's checking account. In finding the testimony to be admissible, the Court noted:

"In Porter v. State, 86 Tex.Cr.R. 23, 215 S.W. 201, the mother of the deceased testified that deceased said at 9:00 P.M. that she was going to meet defendant at a particular location, and that defendant was going to take her to Nolanville so she could board a train for San Angelo. The deceased departed the mother's home at about 11:00 P.M., and her body was found nine days later in a river near the point of her rendezvous with the defendant.

With respect to the mother's testimony, this Court said:

" 'We think that statements made by deceased to her mother while she was packing her clothes and dressing, preparatory to leaving home on the night of her disappearance, in addition to the reasons given in the original opinion, were res gestae of such acts directly explanatory thereof, and admissible in evidence.' 215 S.W. at 213.

"In *Chance v. State,* 125 Tex.Cr.R. 318, 68 S.W.2d 212, this Court again cited authorities supporting the admissibility of hearsay statements made out of the presence of the accused as a part of the res gestae of the transaction between the declarant and the accused. The declarant, in Chance, was, as in *Porter* and the instant case, the victim of murder. This Court said:

" 'Deceased announced his intention of going, had a taxi called to take him . . and the testimony of his statement as to who he was going to see was admissible as showing the motive of his going, and as fixing its destination and character, and same became thus a proper part of the res gestae of such going.' 68 S.W.2d at 213.

"In the instant case, the testimony by the wife of the deceased was admissible as part of the res gestae and explanatory of her husband's meeting with the appellant on January 26, 1970. See *Marshall v. State,* Tex.Cr.App., 384 S.W.2d 893; *Newton v. State,* 147 Tex.Cr.R. 400, 180 S.W.2d 946 (on motion for rehearing)."

Likewise, in the instant case, we find that the testimony was admissible as part of the res gestae and explanatory of the meeting which the deceased planned to have with appellant. We find that the trial court did not err in ruling such testimony to be admissible. Appellant's second through sixth grounds of error are without merit.

In grounds of error seven through ten, appellant maintains that the court's charge to the jury is fundamentally defective. He contends that the charge authorizes a conviction on theories not pled in the informa-

tion, that the charge is not limited to the conduct alleged in the information, that there is a fatal variance between the charge and the information, and that the charge fails to apply the law to the facts of the case. All of these contentions center around the court's failure to require the jury to find that the death of the deceased was caused by "beating her on the head with a hammer." These contentions are raised for the first time on appeal.

Appellant waived prosecution by indictment and was charged by information. The information alleges in part that appellant:

" . . . intentionally and knowingly caused the death of Fannie Kimball by beating her on the head with a hammer."

The portion of the court's charge which applies the law to the facts of the offense recites:

"Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Samuel B. Trostle, as alleged in the information in Harris County, Texas, on or about the 2nd day of November, 1976, intentionally or knowingly cause the death of Fannie Kimball an individual, as alleged in the information, you will find the defendant guilty as charged in the information and say so by your verdict."

■ With regard to his contention that the charge authorizes a conviction on theories not pled in the information and that the charge is not limited to the conduct alleged in the information, appellant relies on *Robinson v. State,* 553 S.W.2d 371; *Morter v. State,* 551 S.W.2d 715. In each of those cases, the jury charge was found to be defective due to the fact that it authorized a conviction under not only the proscribed conduct alleged in the indictment, but, also a different statutory theory from that alleged in the indictment. Appellant also relies on *Ross v. State,* 487 S.W.2d 744. In *Ross,* the charge authorized a conviction under a theory not alleged in the indictment. In the instant case, the information alleges and the charge limits a conviction to the conduct proscribed in V.T.C.A. Penal

Code, Sec. 19.02(a)(1).[1] Thus, appellant's contentions that the charge authorizes a conviction under a theory different from that alleged in the information is not supported by the record.

■ With regard to appellant's contentions that the charge contains a fatal variance and failed to apply the law to the facts of the case, he maintains that the charge allowed the jury to find that death was caused by means other than alleged in the indictment.

We have held that a jury charge which totally fails to apply the law of the offense to the facts of the case is fundamentally defective and may be raised for the first time on appeal. See, *Perez v. State*, 537 S.W.2d 455; *Harris v. State*, 522 S.W.2d 199. In the instant case, the charge set forth the statutory elements of the offense of murder and applied those elements to the facts of the case.

We cannot conclude that the failure of the charge to require the jury to find that the deceased died as a result of being beaten on the head with a hammer was an error calculated to injure the rights of appellant, or that appellant's trial was not fair and impartial as a result of the commission. See, Art. 36.19, V.A.C.C.P. Appellant stipulated in the presence of the jury that the deceased died as a result of blunt trauma to the head. Dr. Jachimczyk testified that such injuries were consistent with the deceased having been beaten with a hammer. Appellant did not cross-examine the witness as to the cause of death nor did he offer any rebuttal evidence to refute same. Thus, the cause of death was not a disputed factual issue in the case.

Absent an objection to the charge, we find no reversible error. In *Cumbie v. State*, 578 S.W.2d 732 this Court set forth all of the errors in charges which have been found to constitute fundamental error. The alleged error in the charge in the instant case does not fall within any of the

infirmities constituting fundamental error set forth in *Cumbie*. While it would have been desirable to include "beating her on the head with a hammer," its omission under the circumstances here does not constitute fundamental error in the charge. Appellant's seventh through tenth grounds of error are overruled.

■ In his eleventh ground of error, appellant contends that the trial court erred in failing to grant a mistrial following improper jury argument by the prosecutor. Specifically, appellant complains of the following argument:

(Prosecutor): "The last thing I want to talk to you about is this: The defendant has the same right to call witnesses as we do. I want you to think about this man who says he has devoted his whole life to God and worked for churches and God. You didn't see a single witness come in here from any church or church-affiliated organizations and tell you what a good man he is.

"MR. ROGERS: I object to counsel commenting on the defendant's character. We have not injected the defendant's character in any manner.

"THE COURT: Sustained.

"MR. ROGERS: Would you please instruct the jury to disregard it?

"THE COURT: The jury will disregard the last comment.

"MR. ROGERS: Because of those remarks, we will move for a mistrial.

"THE COURT: That is overruled."

Generally, an instruction to disregard to the jury is sufficient to cure an error in argument to the jury. *Jones v. State*, Tex. Cr.App., 568 S.W.2d 847; *Chambers v. State*, 568 S.W.2d 313. It has been held that such an instruction to disregard is sufficient to render harmless any error in the type of argument to which appellant complains in this ground of error. See, *Bates v. State*, Tex.Cr.App., 587 S.W.2d 121; *Baker*

---

1. Section 19.02(a)(1), supra, provides in relevant part:

"(a) A person commits an offense if he: "(1) intentionally or knowingly causes the death of an individual; . . ."

*v. State,* Tex.Cr.App., 368 S.W.2d 627. Appellant's eleventh ground of error is overruled.

■ In his twelfth ground of error, appellant contends that the trial court erred in discharging the jury after a verdict of guilty was returned. He maintains that his action in filing a motion for probation required the jury to assess punishment.

The record reflects that on February 14, 1977, appellant filed a sworn motion for probation requesting that if the punishment assessed by "the Court or Jury" does not exceed ten years, that "the Court or Jury" place the defendant on adult probation. Appellant also filed a motion requesting that if the jury returned a verdict of guilty, that punishment be assessed by the court.

In *Ortegon v. State,* 459 S.W.2d 646, the Court considered a contention identical to the one which appellant raises in this ground of error. In that case, it was held:

> "As we view it, the written request to have the judge assess punishment had the effect of withdrawing any request there may have been for the jury to consider the issue of probation and constituted a waiver thereof."

Appellant's twelfth ground of error is overruled.

The judgment is affirmed.