Charles Everett REYNOLDS, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–81–0192–CR.

Court of Appeals of Texas,
Amarillo.

Aug. 5, 1983.

Rehearing Denied Aug. 29, 1983.

State's Petition for Discretionary Review Refused Feb. 1, 1984.

Jack Martin, William Everett Seymour, Ralph H. Brock, Lubbock, for appellant.

Jim Bob Darnell, Criminal Dist. Atty., Bradley Underwood, Hollis M. Browning, Asst. Dist. Attys., Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

COUNTISS, Justice.

Appellant was convicted of murder under § 19.02(a)(2) of the Texas Penal Code (Vernon 1974) and sentenced to 30 years in the penitentiary. We have concluded that appellant's first ground of error, by which he challenges the sufficiency of the evidence, must be sustained. Accordingly, we reverse and dismiss.

The State alleged that appellant committed an act, in Lubbock County, Texas, clearly dangerous to human life by placing Eula Jean Lewis in the trunk of a 1973 Cadillac on September 1, 1980, when the temperature was in excess of 95 degrees, thereby causing her death. In support of its allegations, the State presented the following evidence.

Eula Jean Lewis was a prostitute and appellant was her "man." Several days prior to her death, Eula Jean had indicated to another prostitute that she wanted to quit her occupation and spend more time with her child. Whether that wish was communicated to appellant is not clear, although there is a suggestion that he was angry at Eula Jean the day before her death. Eula Jean was last seen alive with appellant at approximately 3:00 a.m. on September 1, 1980, when she left the company of a friend to go with him in a blue Cadillac he frequently drove but did not own. When she got into the car with appellant, another woman was in the car. There is no evidence that appellant forced Eula Jean to go with him or that he was angry at her when they departed.

Approximately fourteen hours later, at 5:00 p.m., appellant was driving the blue Cadillac down a farm to market road outside Lubbock, toward Buffalo Lakes, with a woman in the front seat and Eula Jean's body, partially covered by bedding, lying in the back seat. When appellant saw a highway patrol driver's license check point ahead of him, he turned and started back toward Lubbock. A patrolman saw him turn, assumed appellant was attempting to evade the check point and pursued him. Appellant stopped in response to the pursuit, got out of the Cadillac and met the patrolman between the two vehicles. Described as "jittery and nervous" by the patrolman, appellant said he had forgotten his driver's license and was returning home to get it. After the patrolman told appellant to stand by the patrol car, he walked to appellant's car to inspect it. When he looked in the car, he observed the top of Eula Jean's head above the bedding in the back seat. The patrolman spoke to the woman in the front seat, then spoke to Eula Jean. Receiving no response from Eula Jean, the patrolman lifted the bedding, felt her leg and found it to be "hard and tense." Although appellant explained that she was ill and he was taking her to a hospital, the patrolman correctly concluded that Eula Jean was dead, and arrested appellant and his companion. None of the Lubbock hospitals are in the direction or along the road appellant was traveling, although the hospital in the nearby community of Slaton could be reached by that route. Buffalo Lakes could also be reached by that route.

The car and Eula Jean's body were carefully examined by various law enforcement representatives. Their findings indicate that Eula Jean died near noon, five to six hours before appellant was arrested, that she had been lying on her back in the trunk of the Cadillac with the lid closed shortly before and perhaps at the time of her death, that she struggled to get out of the trunk, and that she died of suffocation. There was also evidence that the temperature in Lubbock at noon on September 1, 1980, was 83 degrees and that the temperature could have been several degrees higher inside the trunk.

Appellant presented evidence that Eula Jean was seen in or driving the blue Cadillac, without appellant, several times after 3:00 a.m. on September 1, 1980, the last time at approximately 1:30 p.m. in the company of a man other than appellant.

In a murder case based on § 19.02(a)(2), the State must prove that the defendant, (1) intending to cause serious bodily injury

(2) commits an act clearly dangerous to human life that (3) causes the death of an individual. *Lugo-Lugo v. State,* 650 S.W.2d 72, 81 (Tex.Cr.App.1983). Thus, our inquiry is whether, under the applicable review standards, discussed below, there is sufficient evidence of each element of the crime.

Our review of the evidence must be conducted under standards established by the Court of Criminal Appeals. In recent discussions of appellate review of circumstantial evidence, a majority of that Court has concluded that the same standard of review is to be applied to both circumstantial and direct evidence in all criminal cases. *Carlsen v. State,* 654 S.W.2d 444, 448–449 (Tex. Cr.App.1983, opinion on motions for rehearing).[1] *See Hankins v. State,* 646 S.W.2d 191, 199 (Tex.Cr.App.1983). That standard, as stated in *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979), is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Carlsen, supra* at p. 449. Apparently, the Court is in substantial disagreement, however, over the fate of numerous other principles often used in appellate review of circumstantial evidence.[2] The opinion of the Court, on motion for rehearing in *Carlsen,* suggests, for example, that the requirement that the evidence exclude every outstanding reasonable hypothesis except the accused's guilt is an element of the standard of review. The concurring opinion, on the other hand, says the reasonable hypothesis principle is a criterion to be applied but is not an element of the standard of review. That opinion points out, with good logic, that the presence of an alternative reasonable hypothesis simply means the elements have not been established beyond a reasonable doubt. Because the opinion of the Court in *Carlsen* has the unqualified ap-

proval of only two judges, and two judges did not participate, four joined in the concurring opinion and one concurred in the result without joining in an opinion, we can only apply the ultimate standard quoted above from *Jackson v. Virginia* (which is apparently acceptable to at least six of the judges) and await further guidance on the use of other principles. The Court of Criminal Appeals would perform a substantial service for the bench and bar, however, if it would analyze the innumerable statements on appellate review of circumstantial evidence it has made over the years and tell us in a clear majority opinion which rules are to be discarded, which are to be used and how those still viable relate to the ultimate standard of review.

When we apply the ultimate standard to this case, we are convinced the State did not carry its burden. The evidence will support a finding that Eula Jean's death was caused by suffocation while she was in the trunk, but it will not support a finding that appellant caused her death. The State was unable to place her solely in his presence during the critical time period, was unable to place her in his presence under any circumstances within several hours of her death and was unable to offer any evidence of the events that caused her to be in the trunk. Whether we say that the State failed to exclude every other reasonable hypothesis except appellant's guilt or that a rational trier of fact could not have found all of the elements beyond a reasonable doubt, the result is the same. The circumstances are suspicious but not sufficient to establish guilt. Ground of error one is sustained.

Because the sustaining of the first ground of error requires a dismissal of the prosecution, *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978), we

---

1. The Wilson, Freeman, Carlsen and Denby cases were consolidated on motion for rehearing in order for the Court to resolve the same issue in all four cases. References in this opinion to *Carlsen* are to the consolidated cases on rehearing.

2. A lengthy recitation of the various rules is set out in *Flores v. State,* 551 S.W.2d 364, 367–68 (Tex.Cr.App.1977).

do not consider appellant's eight remaining grounds of error. The judgment of the trial court is reversed and a judgment of acquittal is ordered.