Bennie Aubrey **SKINNER**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–90–266–CR.

Court of Appeals of Texas, Fort Worth.

Aug. 12, 1992.

Kenneth G. Mahaffey, Denton, for appellant.

Amy Ayers Adams, Dist. Atty., Donald E. Schnebly, and James S. Cawthon, Jr., Asst. Dist. Attys., Parker County, for the State.

Before JOE SPURLOCK, II, MEYERS and DAY, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

Bennie Aubrey Skinner appeals his murder conviction in which a jury assessed his punishment at life imprisonment. We affirm.

In his first point of error, Skinner contends that there is insufficient evidence to prove that he was responsible for Ronald Thomas's death.

At 12:30 a.m. on July 9, 1989, Ricky Thomas (Ricky), Ronald Wayne Thomas, Sr. (Thomas), and several of their coworkers left the grocery store where they worked and gathered in the parking lot near Ricky's car. After approximately sev-

en minutes, the victim, Thomas, walked to his car, which was approximately ten spaces away.

Ricky and another coworker testified that a man and woman got into the backseat of Thomas's car. The man sat on the driver's side, and the woman sat on the passenger's side. Before getting into the car and driving off, Thomas looked back towards Ricky "like something wasn't right."

Jesse Badgett got off work from the grocery store at 12:30 a.m. on the same day and was picked up by his girlfriend. The two stopped at a fast-food restaurant to eat. They testified that on their way home, they saw Thomas's car on the side of the road between the service road and the highway. They further testified that they arrived at Jesse's home three to four minutes later at "probably about" 1:00 a.m.

The officers placed the car on the side of the road later than Jesse and his girlfriend. At 1:43 a.m. Officer Kubicek observed Thomas's car on the shoulder of the highway approximately one-half mile from the grocery store. Subsequently, Officer Spohn arrived and testified he had driven past the offense location about seven minutes prior to Officer Kubicek finding the car and had not seen the car at that time.[1]

Officers Spohn and Kubicek approached Thomas's car and found him dead, slumped over, with his head toward the right front seat area and his feet on the driver floorboard. Officer Kubicek testified that Thomas's body was cool to the touch and his fingers had begun to turn blue.

Based on witnesses' accounts, the police located Skinner and his wife on July 12, 1989 and took them to the police station. Officer Savage testified that Skinner and his wife were very cooperative, and had gone to the police station several times upon request.

The standard of review is the same for direct and circumstantial evidence cases. *Butler v. State*, 769 S.W.2d 234, 238 (Tex.Crim.App.1989). Nevertheless, the court of criminal appeals has stated: "when reviewing the sufficiency of circumstantial evidence, we ordinarily utilize the outstanding reasonable hypothesis theory as an analytical tool." *Madden v. State*, 799 S.W.2d 683, 690 (Tex.Crim.App.1990). When a conviction is based on circumstantial evidence, it cannot be sustained on appeal unless the circumstances exclude every other reasonable hypothesis except that of the guilt of the accused. *Humason v. State*, 728 S.W.2d 363, 366 (Tex.Crim.App. 1987).

For an outstanding hypothesis to be reasonable, it must be supported by some credible evidence. *Nilsson v. State*, 477 S.W.2d 592, 597 (Tex.Crim.App.1972). For the hypothesis to be outstanding, there must be no evidence to the contrary. Further, the hypothesis must not be out of harmony with the rest of the evidence. *Russell v. State*, 665 S.W.2d 771, 776 (Tex. Crim.App.1983), *cert. denied*, 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984).

Skinner argues that the circumstantial evidence in this case only amounts to strong suspicion because: Thomas left work at 12:30 a.m. and was not discovered until 1:45 a.m.; there was no eyewitness to the shooting; Ricky was only able to state that Skinner looked similar to the man he saw with Thomas; no one could state exactly when the fingerprints were left in the car; the gun offered into evidence was at one time owned by him, but was damaged and never linked in any way to the murder.

### I. Fingerprint Evidence

Skinner's fingerprints were discovered on the inside surface of the driver's window and on the lid to the glass dish found

---

1. In his report, Officer Kubicek stated: "I feel Officer Spohn would have seen the vehicle due to the fact it was not hidden in any manner as I came over the hill in the 600 block of State Highway 199. I saw the vehicle right away."

Officer Spohn testified that when he drove by the car seven minutes earlier, he was driving westbound on the inside lane of the highway, doing radar on oncoming traffic, and that the car would have been to his right. Spohn testified that his attention was focused to his left and that he really could not say for sure whether Thomas's car was in the median when he drove by the first time.

on the backseat on the driver's side. Skinner argues that he could have left his fingerprints on the car window and the glass dish prior to the night of the offense.

Skinner's father testified that Skinner and his wife wanted to buy a used car and that every time one was for sale they would go look at it. Debbie Thomas testified that their Buick was for sale, and that at the time of the offense, the car had a "For Sale" sign on it. Ms. Thomas also testified that to her knowledge the Skinners had never expressed any interest in the car.

Ms. Thomas testified that she knew Ms. Skinner because she had grown up a block from Ms. Skinner's parents' home, and that Thomas and Ms. Skinner dated a few times about thirteen or fourteen years ago.

Ms. Thomas testified that one to two weeks before the murder she and Thomas had dinner with his parents and that she had taken food in the glass bowl for supper. After the dinner the dish was washed and left in the backseat of the car.

■ The standard for evaluating the sufficiency of fingerprint evidence is the extent to which the fingerprinted object was accessible to the defendant. *Phelps v. State*, 594 S.W.2d 434, 436 (Tex.Crim.App. [Panel Op.] 1980). Thomas's wife testified that her husband kept the doors locked on his car; that she and Thomas did not socialize with Skinner and his wife; and that to her knowledge Skinner and his wife had never been in the car before the offense occurred. She further testified that prior to the offense, the dish had been used at a dinner party, washed, cleaned and put in the car. Likewise, an officer testified that fingerprints evaporate over the passage of time. Thus, there was no evidence that Skinner had access to the inside of the car any other time besides the night of the offense, and there is no other reasonable explanation for his fingerprints being there.

## II. The Gun

Skinner claims the .22 caliber pistol offered into evidence was at one time owned

by him, but was damaged and never otherwise linked in any way to the murder. He further claims that regardless of any other evidence pertaining to the gun, Skinner gave his father the gun before the offense occurred.

Initially, Skinner's father said he did not know anything about the gun. Finally, he admitted he had thrown the gun into a field. Skinner's father testified that he picked up the gun from Skinner around the first part of July, approximately a week before Skinner was arrested. However, he later changed his testimony to July 1, 1989, after asking when the victim was murdered. The father gave several reasons for having the gun, such as to make handles for it and to shoot gophers. He gave many conflicting stories regarding why he threw the gun away. At one point, he told the police he threw it away so that the grandchildren could not find it. Eventually, he told the officer that he threw the gun away because it did not work.

Skinner's gun was found in a neighbor's field in two pieces. The cylinder was located on January 25, 1990 and the frame of the gun was located on January 26, 1990. Officer Deville testified that the gun frame had rust spots like it had been weather worn.

Skinner's gun was a .22 caliber which fired .22 caliber long range rifle bullets. The bullets used to kill the victim were .22 long range rifle bullets, consistent with Skinner's gun but also consistent with other weapons. The crime lab director testified that the gun found and identified as Skinner's was consistent with and could have been used in the murder; however, because of intentional damage to the barrel of the gun, a positive link could not be established.

## III. Identification Testimony

At two photographic lineups and at trial, Ricky identified Skinner as looking similar to the man he saw get into Thomas's car.[2] While these identifications were less than

---

**2.** Otis Skinner testified that Ricky knew Bennie Skinner.

positive, Ricky never identified any person other than Skinner. Likewise, Ricky immediately and unequivocally identified Mrs. Skinner as the woman who got in the car with Thomas. Furthermore, the car Ricky identified at the police station as being the one he saw parked next to Thomas's car in the parking lot on the night of the offense was the car Skinner was stopped in three days after the offense.[3]

The fact that a witness cannot positively identify a suspect is a matter to be weighed by the jury. *Valenciano v. State*, 511 S.W.2d 297, 299 (Tex.Crim.App. 1974); *Moore v. State*, 700 S.W.2d 193, 198 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 289 (1986). In a circumstantial evidence case, identification is sufficient, when, considered in relation to all other identification testimony, the conclusion is warranted by the combined and cumulative force of all the circumstances. *Livingston v. State*, 739 S.W.2d 311, 330 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). In the instant case, the jury had the cumulative force of Ricky's identification of a man looking similar to Skinner, identification of the car, the fingerprints, the time frame of the murder, and the circumstances surrounding the gun to help them identify Skinner as the one who killed Thomas.

### IV. Mere Presence

Skinner argues that his being seen with Thomas is not enough to support his conviction, citing *Reynolds v. State*, 664 S.W.2d 734 (Tex.App.—Amarillo 1983, pet. ref'd); *Suff v. State*, 531 S.W.2d 814 (Tex. Crim.App.1976); *Easley v. State*, 529 S.W.2d 522 (Tex.Crim.App.1975). However, the three cases are distinguishable.

In *Reynolds*, the decedent was found in the backseat of the defendant's car when the defendant was stopped for evading a police checkpoint. The lower court found the defendant guilty, and the court of appeals reversed stating: "The State was unable to place her [the victim] in his [the defendant's] presence under any circumstances within several hours of her death and was unable to offer any evidence of the events that caused her to be in the trunk." *Reynolds*, 664 S.W.2d at 736.

In *Suff*, a husband and wife were accused of killing their two-month-old baby. The autopsy revealed that the offense occurred sometime between 6:00 a.m. and 2:00 p.m. The wife went to work around 8:00 a.m. The court of criminal appeals reversed the trial court's finding of guilt as to the wife stating that there was no evidence that the defendant was present at the time the offense occurred, and no evidence that the defendant committed, encouraged or agreed with the offense. *Suff*, 531 S.W.2d at 817.

In *Easley* a young girl was abducted on her way home from school. She was found three days later dead in a ditch. The court of criminal appeals reversed the trial court's finding of guilt because the only evidence connecting the defendant with the murder was that he had been lurking around the neighborhood in the weeks prior to the killing; his car was seen in the vicinity of the crime shortly after the child's disappearance; and there was a chemical similarity between the bullets found in the child and two bullets found at his parent's home.[4] *Easley*, 529 S.W.2d at 524-25.

In the case at hand, the evidence places Skinner on the driver's side of the backseat on the day of the offense, less than thirty minutes to a little over an hour before Thomas was found dead. Dr. Peerwani testified that Thomas had three gunshot wounds, all three localized to the back of his head. Dr. Peerwani testified that the firearm used to kill Thomas had to be positioned "at the back of the decedent at a very close range, two inches or less." One bullet traveled from the back side of the head to the front and slightly upwards in a

---

3. Skinner's younger brother owned the car.

4. However, there was no chemical similarity between the bullets found in the child and the bullets found on the defendant when he was stopped, and the street the defendant was sighted on was a busy street in that area.

left to right direction. One bullet entered through the right back of the head just behind the ear and traveled in a right to left direction. One bullet was to the back of the neck, about half an inch right of the midline. The order of the bullets is unknown, but the bullet to the neck severed the spinal cord and was the fatal wound.

Mr. Shiller, director of the police department crime laboratory, testified that the three shots were fired through a light blue T-shirt found in the back driver's side floorboard at a contact range which caused sixteen holes in the shirt.

Vacuum samples were taken from the crime scene. Mr. Shiller testified that wherever powder from the ammunition cartridges is found, that is a good indicator that a shot was fired in close proximity. The vacuumings indicated that the powder was found on the left rear floorboard area and the left rear seat area. No powder was found on the right front seat, the right front floorboard area, the right rear floor, or the driver's floorboard.

Finally, Mr. Shiller testified that the evidence exhibited a small drop of blood on the headrest cover on the right front seat. He testified that it could be determined that the blood came from the driver's location.

Thus, Skinner's presence combined with the other circumstances and evidence noted above, supports his conviction.

### V. Other Reasonable Hypothesis

■ Skinner argues that all other reasonable hypothesis have not been excluded because "given the fact that another person accompanied the victim and that at least an hour elapsed between the time a person similar to Appellant was seen with the victim and the death, it is equally as likely that someone else besides Appellant committed the crime."

Ricky saw a man similar in appearance get in the backseat of Thomas's car on the driver's side while the woman got in on the passenger's side. Skinner's fingerprints were found on the driver's side window and on a glass dish also located on the driver's side. The forensic testimony showed that

the shots to Thomas's head and neck were administered from directly behind. Although an hour lapsed between the time the car left the parking lot and the time the police officer found the body, Thomas's friends saw his car on the median less than thirty minutes after the car left the parking lot. We find that the hypothesis that someone besides Skinner committed the offense is unreasonable because it is not supported by credible evidence, and there is evidence to the contrary. *See Nilsson*, 477 S.W.2d at 597; *see also Russell*, 665 S.W.2d at 776. Thus, we find the evidence sufficient to find Skinner guilty of the crime charged. Point of error number one is overruled.

■ In point of error number two, Skinner contends that the trial court erred in cutting short his informal bill of exceptions in which he would have shown that Ricky's in-court identification of him and his wife was influenced by impermissibly suggestive pretrial police procedures.

When the time came in the trial for Ricky to identify Skinner and his wife in court, the defense counsel objected, stating that the police used improper procedures during Ricky's pretrial identification of Skinner. Subsequently, the defense counsel took Ricky on *voir dire* outside the presence of the jury. After defense counsel questioned Ricky for quite some time, the judge stated:

> Okay. Mr. Smith [defense counsel], from what I've heard so far, I'm beginning to have a better understanding of what is being presented here.... I'm prepared to cut short your cross-examination here outside the presence of the jury, and to move back to the situation where we have the jury here, unless you have something that I am not aware of that you feel like you need to go into further.

Defense counsel then objected for several reasons. In pertinent part, defense counsel objected as follows:

> Mr. Brock Smith [defense counsel]: Your Honor, we further object to the court cutting us off, not allowing us to

pursue the hearing outside the presence of the jury. I would represent to the court that the defense would prove that the witness, Mr. Thomas, was shown photographs of the defendant, and also of the spouse, that impermissibly suggest his in-court identification here today.

We would further demonstrate to the court that he had an opportunity to view these people on July 12th of 1990 [sic], when they were there at the police station so that his—any other line-up he made after that would be tainted and suggestive after that particular day.

■ Skinner correctly contends that the right to make an offer of proof or perfect a bill of exception is absolute. *Tatum v. State*, 798 S.W.2d 569, 571 (Tex.Crim.App. 1990).[5] Skinner states in his brief that he perfected an informal bill of exceptions, however, he contends he was "cut short" by the judge and therefore deprived of his right. However, during the informal bill, defense counsel expressed his theory of why the identification procedures were impermissibly suggestive when he stated, "We would further demonstrate to the court that he had an opportunity to view these people on July 12th of 1990 [sic], when they were there at the police station ..." Furthermore, Skinner states in his brief that defense counsel "stated in summary fashion [in his informal bill] what he intended to prove ..." Therefore, the judge was aware of the evidence he was excluding.

Skinner does not explain on appeal how the photographic lineups were suggestive, except to say that he and his wife were at the police station on one of the same days that Ricky looked at a photographic lineup, and therefore, any identifications made after that were tainted. Following the informal bill, defense counsel cross-examined Ricky in front of the jury about the photographic lineups. He asked Ricky whether he saw a man in a trench coat or a woman in a floral veil (the Skinners) at the station on July 12th. Ricky responded that he did not see the man, and he did not remember if he saw the woman, therefore, there is no proof of any taint except in the mind of Skinner. Thus, even if defense counsel had been allowed to more fully develop the excluded evidence, no harm occurred because Ricky's answers did not support defense counsel's theory that the identification procedures were impermissibly suggestive. Point of error number two is overruled.

■ In point of error number three, Skinner contends that the trial court erred in instructing the jury on the full statutory definitions of "intentionally" and "knowingly." For a conviction under section 19.-02(a)(1) of the Texas Penal Code, the jury must find that the defendant engaged in the conduct which caused the result, and knowingly caused the result. TEX.PENAL CODE ANN. § 19.02(a)(1) (Vernon 1989); *see Martinez v. State*, 763 S.W.2d 413 (Tex. Crim.App.1988). Skinner contends that because the full definition was given, the jury could have found him guilty of murder by finding only that he intentionally or knowingly committed the offense, without finding that he intended or knew that death would result from his conduct. *See Leal v. State*, 800 S.W.2d 346, 347 (Tex.App.—Corpus Christi 1990, pet. ref'd).

The trial court in the instant case charged the jury as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware

---

5. TEX.R.APP.P. 52(b) provides for the preservation of appellate complaints by an informal offer of proof:

When the court excludes evidence, the party offering same shall as soon as practicable, but before the court's charge is read to the jury, be allowed to make, in the absence of the jury, an offer of proof in the form of a concise statement. The court may, or at the request of a party shall, direct the making of the offer in question and answer form....

of the nature of his conduct or that the circumstances exist. A person acts knowingly or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

. . . .

Now, if you find and believe from the evidence beyond a reasonable doubt that on or about the 9th day of July, 1989, in Parker County, Texas, the Defendant, Bennie Aubrey Skinner, *did intentionally or knowingly cause the death of an individual*, Ronald Wayne Thomas, Sr., by shooting him with a firearm as alleged in the indictment, then you will find the Defendant guilty of murder. Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant of the offense of murder and say by your verdict "Not Guilty." [Emphasis added.]

The above charge did not authorize a conviction on the theory that Skinner shot a firearm, but it required the jury to find that Skinner intentionally and knowingly caused the result. *See Leal*, 800 S.W.2d at 346; *see also Kinnamon v. State*, 791 S.W.2d 84, 89 (Tex.Crim.App.1990) (in a murder charge, the court found that even though the full statutory definitions of "intentionally" and "knowingly" were used in the jury charge, when read in conjunction with the charge's application section, the jury was properly required to find that the defendant's objective was to cause the victim's death).

Skinner relies on *Alvarado v. State*, 704 S.W.2d 36 (Tex.Crim.App.1985). In *Alvarado*, the court held that because injury to a child was a result-oriented offense, the full statutory definitions of intentionally and knowingly should not be submitted to the jury. *Id.* at 39–40. However, there was no mention of an application paragraph in that case. Moreover, *Kinnamon* is a more recent court of criminal appeals case and appears to distinguish itself from *Alvarado* by stating that the definitional portion of the charge in *Kinnamon* was restricted by the application paragraphs

which is the same as the case at bar. Point of error number three is overruled.

■■■ In his fourth point of error, Skinner contends that the trial court erred in refusing to provide a court reporter for a bench conference. Skinner maintains that upon a proper request, an accused has an absolute right to require a court reporter to record all proceedings before the court and that "any refusal to furnish a court reporter is *per se* prejudicial. Harm need not be shown," citing *Soto v. State*, 671 S.W.2d 43, 45–46 (Tex.Crim.App.1984). Skinner contends that he made a specific pretrial motion that the court reporter be instructed to record all proceedings including "any bench conferences or in camera conferences held during this trial."

The court in *Soto*, instead of providing a court reporter as requested, had the County Clerk tape the proceedings and then transcribe them. The record on appeal was incomplete. *Id.* The issue in that case was "whether the trial court may employ other comparable alternative methods in insuring an appellate record is prepared, after the appellant has requested that a court reporter take down the proceedings." *Id.* at 44. In *Soto*, no court reporter was provided at all, whereas in the instant case a single bench conference was not recorded.

The facts in the instant case show that there was a bench conference because the State objected to a line of questioning by the defense counsel. The judge refused the defense's request to have the bench conference recorded. However, after the bench conference was concluded, the judge went back on the record, stated the substance and subject of the bench conference and gave counsel an opportunity to respond. Defense counsel did not respond. Furthermore, regarding the objection which necessitated the bench conference, the judge ruled in Skinner's favor by overruling the State.

Skinner acknowledges that there is contrary authority to his argument, but contends that those cases were decided before *Soto*, and therefore, they are no longer authority. *See Walthall v. State*, 594 S.W.2d 74 (Tex.Crim.App. [Panel Op.]

1980); *see also Aranda v. State*, 640 S.W.2d 766 (Tex.App.—San Antonio 1982, no pet.). However, the *Soto* court did not state it was overruling *Walthall* or *Aranda.* Moreover, *Phillips v. State*, 701 S.W.2d 875 (Tex.Crim.App.1985), *cert. denied*, 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986) was decided a year after *Soto*, and that court followed *Walthall.* *Phillips*, 701 S.W.2d at 894.

In *Phillips*, the court emphasized that the burden of preserving and presenting error is upon the complainant. The *Phillips* court stated:

> [A]ppellant did not object during trial to the court reporter's failure to record the bench conferences, nor were the omissions raised in his objections to the record. Appellant also fails to allege that anything pertinent took place during the bench conferences.

*Id.* at 894. In the instant case, although defense counsel requested a court reporter, he did not object when the request was denied, and he has not alleged that "anything pertinent took place during the bench conferences." *Id.* Point of error number four is overruled.

 In his fifth point of error, Skinner argues that the trial court erred in entering a deadly weapon affirmative finding because the jury did not make such a finding.

The judgment of the conviction recites that, "The jury finds that the Defendant used or exhibited a deadly weapon during the commission of the offense." An affirmative finding that a defendant used or exhibited a deadly weapon must be made by the jury. TEX.CODE CRIM.PROC. ANN. art. 42.12, § 3g (Vernon Supp.1992); *see Ex parte Thomas*, 638 S.W.2d 905, 907 (Tex.Crim.App.1982). Skinner argues that the jury did not make a finding concerning use of a deadly weapon. In pertinent part, the charge provided:

> Now, if you find and believe from the evidence beyond a reasonable doubt that on or about the 9th day of July, 1989, in Parker County, Texas, the Defendant, Bennie Aubrey Skinner, did intentionally or knowingly cause the death of an individual, Ronald Wayne Thomas, Sr., by shooting him with a firearm *as alleged in the indictment*, then you will find the Defendant guilty of murder. [Emphasis added.]

The jury's verdict at the guilt-innocence stage read:

> We, the Jury, find the Defendant, Bennie Aubrey Skinner, guilty of the offense of Murder.

The jury's verdict at the punishment stage read:

> We, the jury, find the Defendant, Bennie Aubrey Skinner, guilty of the offense of murder, *as charged in the indictment*, and now assess his punishment at confinement in the Texas Department of Corrections for Life. [Emphasis added.]

In *Clark v. State*, 754 S.W.2d 499 (Tex. App.—Fort Worth 1988, no pet.), this court identified the following three instances when a deadly weapon finding may be properly entered on a judgment by the trial court:

> (1) the indictment specifically alleges the words "deadly weapon" in describing the weapon used, *and* the verdict reads "guilty as charged in the indictment;"
>
> (2) the indictment names a weapon which is per se a deadly weapon and the verdict reads guilty as charged in the indictment; or
>
> (3) a special issue is submitted to the trier of fact and answered affirmatively.

*Id.* at 500, citing *Polk v. State*, 693 S.W.2d 391, 394 (Tex.Crim.App.1985).

The second instance is applicable to the case at hand. The indictment alleges use of a firearm, which is a deadly weapon per se. *See* TEX.PENAL CODE ANN. § 1.07(a)(11) (Vernon 1974). The jury's verdict at the guilt-innocence phase found Skinner "guilty of the offense of Murder"; however, the verdict at the punishment phase found Skinner "guilty of the offense of murder, as charged in the indictment." The court of criminal appeals has held that a reference to the indictment at the punishment stage alone constitutes a proper affirmative finding. *Ex parte Kirkland*, 768 S.W.2d 304, 305 (Tex.Crim.App.1989); *De-*

*Anda v. State,* 769 S.W.2d 522, 524 (Tex. Crim.App.1989). Point of error number five is overruled.

The judgment is affirmed.