Michael D. Meredith, Asst. Dist. Atty., Danny E. Hill, Dist. Atty., Amarillo, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

**Jerry ZIMMERMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–87–0090–CR.**

Court of Appeals of Texas, Amarillo.

June 2, 1988.

Rehearing Denied June 20, 1988.

REYNOLDS, Chief Justice.

A jury found appellant Jerry Zimmerman guilty of the offense of voluntary manslaughter, and assessed his punishment at confinement for 20 years and a fine of $10,000. Agreeing with appellant's sole contention that the evidence is insufficient to support the conviction, we reverse and render.

The body of appellant's estranged wife, Caroline Sue Zimmerman, was discovered in a mesquite patch in Potter County on 25 May 1983. Her death resulted from a single .22 caliber gunshot wound. An autopsy performed by Dr. Ralph Erdmann established that the bullet entered her chest 6.5 centimeters left of the anterior midline, passed through her heart and right lung, and lodged in her back near her right shoulder blade at a point two inches higher than the point of entry.

Investigation lead to the indictment of appellant for murder, the State alleging that on or about the 24th day of May 1983, he knowingly and intentionally caused the death of Caroline by shooting her with a firearm. On 10 November 1983, a jury found appellant to be incompetent at that time to stand trial, and he was committed to Rusk State Hospital. More than three years later on 11 December 1986, another jury determined that he was competent to stand trial. The trial was held in the early part of February, 1987, and the trial court found appellant guilty of the lesser included offense of voluntary manslaughter.

At the outset, it is to be noticed that the burden of proof in a criminal case is on the State to prove every element of the offense beyond a reasonable doubt, whether the State is relying on circumstantial or direct evidence. *Johnson v. State,* 673 S.W.2d 190, 195 (Tex.Cr.App.1984). In the present case, the State's prosecution was based, and of necessity the conviction rests, upon circumstantial evidence. Circumstantial evidence is proof of a chain of circumstances which, by logical inference, demonstrates the fact to be proved. The fact to be proved to support appellant's conviction, as founded upon the jury's verdict, is that he intentionally and knowingly caused the death of Caroline under the immediate influence of sudden passion arising from an adequate cause. Tex.Penal Code Ann. § 19.04 (Vernon 1974).

In this prosecution, the fact to be proved can be established by circumstantial evidence only if the inference arising from the evidence prove the fact beyond a reasonable doubt. *Hankins v. State,* 646 S.W.2d 191, 199 (Tex.Cr.App.1981). Every circumstantial case must necessarily be tested by its own facts to determine the sufficiency of the evidence to support the conviction. *Autry v. State,* 626 S.W.2d 758, 761 (Tex. Cr.App.), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982).

The standard for review of the sufficiency of the circumstantial evidence, as it is for direct evidence, is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Cr. App.1983). Of course, if the evidence supports an inference other than the guilt of appellant, then the jury's finding of guilt beyond a reasonable doubt is not a rational finding. *Id.* at 472. This obtains because, as it has been said,

> Logic dictates that if there is a "reasonable hypothesis" other than the guilt of the accused, then it cannot be said that the guilt has been shown "beyond a reasonable doubt."

*Wilson v. State, supra,* at 472 (McCormick, J., concurring).

The evidence heard by the jury, summarized in chronological order from the testimony of the witnesses, including appellant, reveals that Caroline married appellant following a courtship of two or three months. Approximately a week later, after "little squabbles" when Caroline would not talk to him about their marriage, appellant admittedly "choked her for a while." Caroline asked appellant to leave her house, whereupon he gathered his clothes and left.

Some time thereafter, Caroline procured a peace bond against appellant, and caused the filing of a petition to annul or declare void their marriage because of appellant's undissolved prior common law marriage to one Betty Tinker. Subsequently, appellant made two attempts to contact Caroline and, on 24 May 1983, she consented to his coming to her house. He said his visit was an attempt to reconcile their marriage.

When appellant arrived in his car, Caroline was mowing her lawn. The two of them were seen talking in the front yard and on the front porch and no hostility was observed.

They entered the house, talked some more and, according to appellant, decided to go to a movie. While they were in the house, Lisa Campbell, Caroline's daughter, telephoned. To Lisa, Caroline sounded "upset, nervous and seemed scared," and denied that appellant was there. Immediately after the call, Lisa phoned her mother's next door neighbor, who verified that appellant's car was in the driveway. Fin-

ishing the call, Lisa left for Caroline's house, but when she arrived some five to ten minutes later, Caroline and appellant were gone.

Ernest Lee Burns and George Burgett, Caroline's next door neighbor, saw Caroline and appellant engaged in normal casual conversation in the front yard with no appearance of trouble. After they entered the house, Burgett heard a gunshot he thought had come from a creek near his house, for it did not sound like it came from Caroline's house. He did not hear any yelling, arguing, or sounds out of the ordinary and, based upon his experience as a next door neighbor, he could have heard raised voices if there had been any.

Caroline and appellant, so appellant said, walked out of the house onto the porch where he, "just funning around," picked her up, which made her "kind of mad." Neighbors saw appellant carry Caroline to and place her in the passenger side of his car, but none of them could testify whether she walked out of the house or as to her condition when appellant placed her in the car.

Burgett, who opined that appellant carried Caroline like a man carrying his bride, thought they were happy. He did not observe whether Caroline positioned herself in the seat. He did not think anything was wrong until, observing them drive by his house for less than five seconds, he saw appellant turn and look at him, but noticed that Caroline looked straight ahead with her eyes open and did not move. Another neighbor, Sharon Ray, seeing appellant carry Caroline to the car, thought that appellant was drunk, and did not look to see how Caroline was placed in the car.

Some time later, either after or instead of going to a movie, appellant, by his account, decided on the way home that he wanted to talk to "try to straighten things out." He drove down a side street and pulled onto the shoulder of the roadway. When he stopped, Caroline became "scared or something ... pulled a gun out of her purse, and faced toward [him]." The gun was a small silver pistol belonging to Caro-

line. He "reached over and grabbed hold of the gun and jerked it down in the seat."

The gun fell out of Caroline's hand, landed in the middle of the front bench seat, and a scuffle ensued. Both grabbed for the gun, appellant with his right hand and Caroline with her left hand. Appellant professed to not know who got the gun first, but it fired. He looked at Caroline, saw "fright in her eyes," and then she "kind of slumped forward" in her seat.

"[S]hook up," appellant drove around for some time, periodically checking to be certain that Caroline was dead. Then he panicked, and because he was "afraid" of Caroline's friends, he took her body from the car and put it in a mesquite bush. He left her purse across the road near her body, and he threw the gun out along the highway. The gun was not recovered.

Appellant drove to Albuquerque, abandoned his car, and rode a bus to San Francisco. Approximately a week later, he returned to Texas and went to Stephenville to stay with his father. He was apprehended about two days later.

From the report of the discovery of Caroline's body, it was ascertained that the eyes were closed, the body was clad, and it was shod in high-heeled shoes. Laboratory inspection and testing of the clothing did not reveal any grass clippings.

Lisa Campbell testified that her mother, Caroline, owned a small silver pistol, which she, Lisa, did not see when she looked through Caroline's house on 24 May 1983. Later, a police officer found some .22 caliber bullets in a shaving kit, which was appellant's, halfway under the bed.

Investigation disclosed one spot of blood on appellant's pants and a spot of blood on a washcloth in the house, each of which was too small for grouping tests and could have been anybody's blood. No blood was found on any other item in the house, nor on the route from the house to the place appellant parked his car, nor in appellant's car. One hair from Caroline's head was found in appellant's car which, it was agreed, was as consistent with her being alive as it was with her being dead when she lost it.

Doctor R. Preston Shaw, whose specialty is psychiatry, had been seeing appellant on an occasional basis since September of 1984. He diagnosed appellant as schizophrenic, paranoid type. The diagnosis was confirmed in August of 1985 and in November of 1986. He explained that a person of paranoid nature feels that people are against him, and that he generally does not trust people. Based on a hypothetical composition of circumstances paralleling appellant's version of the events, Dr. Shaw expressed the opinion that flight would be as consistent with pure paranoia as it would be with guilt.

The State's theory of the prosecution is that appellant shot and killed Caroline while they were in the house, carried her body to his car, drove to a rural location where he left her body, and then fled. To the contrary, appellant submits that the State's evidence fails to exclude the reasonable hypothesis, founded on his exculpatory exposition, that Caroline's death resulted from a gunshot wound accidentally incurred during a struggle for her gun.

Because the jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony, the jury was not required to, and obviously did not, credit appellant's exculpatory testimony. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Cr.App.1984). Then, appellant's point of error is determined by whether the evidence, viewed in the light most favorable to the prosecution, supports a reasonable inference other than appellant's guilt. The determination is made by following the rule that circumstantial evidence covers all facts in the case, and not one particular fact. *Oliver v. State,* 160 Tex.Cr.R. 222, 268 S.W.2d 467, 469 (1954).

Given the circumstantial evidence in this case, the immediate difficulty with the State's theory is that the facts proven, albeit supporting the inference of guilt, do not, by logical inference, demonstrate beyond a reasonable doubt the State's theory that appellant shot and killed Caroline while they were in her house. In support of its theory, the State proved that while they were in the house, a shot was heard,

the inference being that appellant shot Caroline at that time. Yet, the inference is not a logical one, for the State did not evidence that the sound of the shot came from in the house.

To further support its theory, the State produced evidence that appellant carried Caroline to his car, the inference being that she was dead. Yet, the evidence equally supports the reasonable inference that she was then alive. No witness saw her carried out of the house; they only saw her carried to the car. The evidence of Caroline's clothing and the laboratory testing and analysis of it is consistent with the inference that she had changed clothing preparatory to leaving the house. At the time of her departure from the house, Caroline's eyes were open; when her body was discovered, the eyes were closed.

Finally, the State focuses on appellant's disposition of Caroline's body and his flight from the scene where her body was found, the inference being that flight, coupled with the other circumstances, is evidence of guilt. Yet, appellant's presence at the scene of the crime and his flight therefrom are not alone sufficient to conclude, beyond a reasonable doubt, that he committed the offense, particularly where the other circumstances support a reasonable hypothesis other than his guilt. *King v. State,* 638 S.W.2d 903, 904 (Tex.Cr.App.1982).

Therefore, the proof of the chain of circumstances upon which the State relies does not, by logical inference, demonstrate the fact that appellant caused the death of Caroline as the State alleged. The proof does not exclude the reasonable hypothesis that her death resulted in another manner, even in the manner testified to by appellant since his version is consistent with trajectory of the fatal bullet.

However strong may be the suspicion that appellant is guilty, the duty remains with this Court to insure that no one is convicted of a crime except upon proof beyond a reasonable doubt and, in this circumstantial evidence case, upon proof excluding all reasonable hypotheses except appellant's guilt. *Easley v. State,* 529 S.W.2d 522, 525 (Tex.Cr.App.1975). The

238

proof in this case does not rise to that level; it leaves a reasonable doubt.

It long has been a principle in our jurisprudence that where an issue in a criminal case is left in doubt by the evidence, as it is in this case, the doubt should always be resolved in favor of the accused. It is at this point that the presumption of innocence and reasonable doubt have particular meaning. *Trejo v. State,* 45 Tex.Cr.R. 127, 74 S.W. 546, 548 (1903).

Accordingly, the judgment of conviction is reversed and, the evidence having been found insufficient, judgment is here rendered that the prosecution is dismissed. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).