IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-429-CR





ROBERT LOPEZ,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT



NO. 0920289, HONORABLE TOM BLACKWELL, JUDGE PRESIDING



 





 After finding appellant guilty of the offense of injury to a child, Tex. Penal Code
Ann. § 22.04(a)(1) (West Supp. 1994), the jury assessed punishment at confinement for life. In
both of his points of error, appellant contends that the trial court erred in holding that the evidence
was sufficient to support the conviction. We will overrule appellant's points of error and affirm
the judgment of the trial court.

 Letrice Scott, assistant head nurse of the pediatric intensive care unit at Children's
Hospital of Austin, testified that Robyn Lopez, age two and one-half months, was brought to the
hospital by the infant's "mom and the grandmother" on October 23, 1991. Scott, "charge nurse"
for the shift, observed that the infant was having seizures, a "bicycling movement of the arms and
legs." Dr. Linda Norton, a forensic pathologist whose expertise was in the area of child abuse
and child death, testified that her review of the victim's medical records showed that the infant
sustained eleven separate fractures. Dr. Norton related that the three skull fractures constituted
the most significant injuries because they resulted in an injury to the brain. Other than a fall from
two to five stories or an automobile accident, Dr. Norton opined that to have sustained such
severe injuries, "you're dealing with a child who has been assaulted." Dr. Norton stated that the
immediate effect of these types of injuries would have rendered the victim "unconscious," the
victim would have "respiratory arrest seizures," and the "immediate symptoms would be obvious
to anyone taking care of the child." Dr. Norton described the long term effects of the injuries to
the victim as blindness, paralysis on the left side of the body, being "barely able to sit up," and
will never be a "normal functioning adult."

 The victim was the youngest of three children born to appellant and Michelle
Gonzalez. They shared a residence with appellant's sister, Irene Dumaron and her husband, John
Dumaron. On the day in question, John loaned his car to appellant in order that he might take
Michelle to work and run errands. Except for appellant's brief appearance during the noon hour,
John was with the children until appellant returned home at four o'clock that afternoon. John
described Robyn's behavior as normal when he was with the children. John stated that he did not
observe any injuries or bruises on her body when he changed her diaper. John testified that he
left for work when appellant returned home at 4:00 p.m. Later that day, John related that he
received a call from Irene that prompted him to leave work to look for appellant "because [she]
told me that he [appellant] had run away from the police." Although he recanted the statement
at trial, John told the police that he next encountered appellant when he took him to Keith Bank's
house where appellant stated that Robyn had been injured when she fell off the bed.

 Irene testified that she and Michelle arrived home from work around 5:00 p.m. on
the day in question. After checking on her child, Irene stated that she went to Michelle's room
where she saw Michelle holding Robyn in her arms. Irene described Robyn's condition as "white
as a ghost and could barely breathe, trying to take gasps of air." Irene related that she and
Michelle "took off and went to the hospital" with Robyn. When Irene and Michelle returned
home from the hospital later that evening, they were accompanied by caseworker Ashley Burgess. 
Irene stated that she found appellant and Robert, Jr. in the bathroom. Irene observed that
appellant was nervous and Robert, Jr. was crying. Irene testified that she advised appellant to talk
to the caseworker. Irene related that, rather than following her advice, appellant left, taking
Robert, Jr. with him.

 Robert, Jr., aged four, testified that he saw his dad (appellant) standing next to
Robyn's crib on the afternoon in question. Robert, Jr. stated that he saw his dad hit Robyn. 
When Robyn cried, "He [appellant] hit her and he covered her mouth." Robert, Jr. did not
remember Robyn falling from the crib.

 Appellant testified that after he returned home about 4:00 p.m., he talked to Carlos
Ramos about cars until Michelle and Irene arrived. Appellant related that he then went to the
kitchen to fix himself something to eat. Appellant stated that Michelle was alone with Robyn in
the bedroom until Irene called for him to come to the bedroom. Appellant testified that Robyn
was not breathing, and that Michelle and Irene took Robyn to the hospital. Appellant stated that
when he had seen Robyn prior to this time, she was "doing good, sleeping good and everything." 
Appellant testified that he had seen Michelle spank Robert, Jr., make him sleep under the bed
until he went to sleep, and on occasion had him stay in a dark storage room.

 In his first point of error, appellant urges that the circumstantial evidence is
insufficient to support the conviction since there was an outstanding hypothesis of guilt of another
person, Michelle. The testimony of Robert, Jr. about what he observed on the occasion in
question would appear to refute appellant's circumstantial evidence theory. However, assuming
that appellant's conviction was dependent on circumstantial evidence, the instant cause was tried
in August 1992, a date following the effective date of Geesa v. State, 820 S.W.2d 154 (Tex.
Crim. App. 1991). Therefore, our review of the sufficiency of the evidence does not include a
determination of whether there is an outstanding reasonable hypothesis inconsistent with guilt.

 In reviewing the evidence as an appellate court, we must determine whether,
viewing the evidence in the light most favorable to the conviction, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 319 (1979); Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989),
overruled by Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991) (overruled to extent
that opinion conflicted with Geesa by using analytical construct of excluding every reasonable
hypothesis). The Court of Criminal Appeals in Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988), amplified on the correct way to apply the Jackson standard:



The court is never to make its own myopic determination of guilt from reading the
cold record. It is not the reviewing court's duty to disregard, realign or weigh
evidence. This the factfinder has already done. The factfinder, best positioned to
consider all the evidence first-hand, viewing the valuable and significant demeanor
and expression of the witnesses, has reached a verdict beyond a reasonable doubt. 
Such a verdict must stand unless it is found to be irrational or unsupported . . . 
by . . . the evidence, with such evidence being viewed under the Jackson light. 
Concrete application of the Jackson standard is made by resolving inconsistencies
in the testimony in favor of the verdict.



Since the exclusion of the reasonable hypothesis analysis in circumstantial evidence cases, the
Jackson standard is applicable in determining the legal sufficiency of the evidence in all criminal
cases.

 Appellant directs our attention to the fact that Michelle was the last person with
Robyn before she was taken to the hospital and to the evidence of Michelle's mistreatment of
Robert, Jr. Appellant also points to Dr. Norton's testimony that in injuries of the type sustained
by Robyn the victim would be unconscious. Appellant urges that this expert testimony contradicts
grand jury testimony of Michelle, admitted at trial as a statement against penal interest, that
Robyn was crying when she first saw her.

 Unlike Zimmerman v. State, 753 S.W.2d 234, 237 (Tex. App.--Amarillo 1988, no
pet.), cited by appellant, we find additional evidence other than appellant's presence at the scene
and his flight therefrom to support the instant conviction. Robert, Jr., whose competency as a
witness was not challenged, testified that he saw appellant hit Robyn and cover her mouth. The
testimony of appellant's brother-in-law, John, reflects that Robyn's condition appeared normal
when he left her in the care of appellant. Appellant's sister, Irene, testified that she proceeded
to Michelle's room shortly after she and Michelle arrived home from work where she observed
that Robyn could barely breathe.

 Viewing the evidence in the light most favorable to the verdict, we find that any
rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Appellant's first point of error is overruled.

 In his second point of error, appellant urges that the evidence is not factually
sufficient to support the conviction. In Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin
1992, pet. ref'd, untimely filed), this Court set forth the following standard for a factual review
of the evidence:



[T]he court views all the evidence without the prism of 'in the light most favorable
to the prosecution.' Because the court is not bound to view the evidence in the
light most favorable to the prosecution, it may consider the testimony of defense
witnesses and the existence of alternative hypothesis. The court should set aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust.



(citations omitted).

 After considering and weighing all the evidence pursuant to the dictates of Stone,
we conclude that the jury's verdict is not so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. Appellant's second point of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice


Before Justices Aboussie, B. A. Smith and Davis*; Justice Aboussie Concurring


Affirmed


Filed: March 23, 1994


Do Not Publish






* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1988).