ARTHUR HILL v. THE STATE.

No. 13138. Delivered May 6, 1931.

The opinion states the case.

*W. R. Parker, Virgil R. Parker* and *Clarence Parker,* all of Fort Worth, for appellant.

*Stinson, Hair, Brooks & Duke,* of Abilene, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Offense, burglary; penalty, confinement in the penitentiary for three years.

This is the second appeal in this case. The former is reported in 113 Texas Crim. Rep., 85, 18 S. W. (2d) 1086.

The state relied wholly upon circumstantial evidence for conviction, there being no testimony in the case directly showing the number of men participating in the burglary or the identity of any person or persons who took part in or were present at the time of the commission of the offense. The bank in the town of Peacock was burglarized. A recently discharged pistol was found the next morning. The burglars evidently fled, leaving the safe which had been carried from the bank, an automobile trailer and the pistol. Among tracks leading to the bank appeared

those of a deformed foot. This case is brought before this court for review upon the assignment that the verdict of the jury is not sufficiently supported by the evidence.

The witness T. O. Osborn testified that on Saturday, April 24, 1925, he lived in Clairemont, Kent county, Texas, and was running a garage on the west side of that town. He testified that appellant with a party of men drove up to his garage about two or three p. m.; that it was on the Saturday before the robbery of the bank early Monday morning on the 26th; that they made some purchases and inquired the way to Benjamin and other points; that he talked with the appellant; that there was a man with a mustache in a Chevrolet car and appellant was sitting in the car with this man; that there was a trailer attached behind this car; that there were several other men in the party and there were two or more other cars.

S. A. McCombs, sheriff of Kent county, testified that he saw appellant and a party of men on the Clairemont-Gerard road on Saturday afternoon before the bank burglary early Monday morning near Ducks Creek; that he talked with the appellant, who made some inquiries as to roads. This testimony described practically the same party of men and automobiles as that of the witness Osborn.

J. L. Goggin testified that he saw a party of men near his home as they were leaving the Rising Star schoolhouse early Sunday morning; that the party consisted of above five men and that they had about the same type of automobiles with the trailer attached that the two preceding witnesses had testified about. This witness did not testify that the appellant, Arthur Hill, was among the men seen.

The witness I. D. Rogers testified that he saw a party of men and automobiles with a trailer attached to one of them on the road near the Rising Star schoolhouse in Kent county on Sunday, April 25th, before the burglary of the bank early the following Monday morning. He testified that they were driving towards the town of Peacock. Witness did not identify the appellant, Arthur Hill, as one of the parties.

Oly Gray testified that on Sunday, the day before the robbery, he saw apparently the same party of men and automobiles at about two or three o'clock near the crossing of the Peacock-Dayton road over the Brazos river near Peacock. He identified the appellant as one of the parties; that later at about sundown he returned by said place and again saw this party of men at the same point. This is the last testimony showing the whereabouts of this party of men and automobiles before the burglary occurred.

No witnesses identified other than by a meager description any of the other men in the party of which appellant was claimed to be one. No witness put the appellant in company with anybody in the town of Peacock at any time during the burglary or otherwise. No witness put any

man of this party in the town of Peacock at any time before, during the burglary or after it. There is no testimony as to what occurred from the time this party of men were last seen about sundown by witness Oly Gray until the witness R. A. Hays testified that a Chevrolet car passed him at a filling station at the edge of Peacock about five o'clock Monday morning going west. He testified that there were two cars in this party but did not identify anybody by description or otherwise. Several witnesses identified the trailer found at the bank to the best of their knowledge and belief as being the same trailer seen by them attached to the car in which appellant was seen traveling. Witnesses testified that the morning after the discovery of the burglary that there was blood on the sidewalk and a discharged pistol, also foot prints of a man apparently crippled in one foot. It was proven by other witnesses that one Lefty Fuller, a cripple, some week or ten days later died in a Fort Worth hospital from a gunshot wound in his foot; also that appellant knew this man and sometimes associated with him, and that he visited him before his death at the hospital. The man Lefty Fuller was not identified by anyone by name or description who saw the party of men at any of the places testified to, either before the burglary or in the route of the automobile leaving Peacock early the morning after the burglary. There was also testimony that the pistol found at the bank was a pistol similar to one which Lefty Fuller owned prior to the burglary. There was the testimony of the witness Dorothy Star, who testified that Lefty Fuller was brought to her house with a bullet wound in his ankle on Tuesday after the robbery. She also testified that Fuller was a cripple and had been shot in the left foot, and that he had a pistol similar to the one found at the scene of the burglary. Dr. Littlepage testified that he attended Lefty Fuller for a gunshot wound in the ankle about the 28th day of April; that the appellant's mother called him to come to see Fuller; that Fuller was injured in the left ankle; that said Fuller lingered for about ten days before he died. He also testified that appellant, Arthur Hill, was not at the house when he called to see Fuller, but he saw him at the hospital one time.

We have set out the substance of all the evidence relied upon by the state in this case for a conviction. The appellant offered no evidence.

We quote from Branch's Ann. P. C. of Texas, sec. 2369, as follows:

"To sustain a conviction for burglary it should appear not only that a burglary as charged has been committed but there should also be proof to a greater degree of certainty than a mere probability or a strong suspicion that the party charged was the person who committed it or was a participant in its commission. There must be legal and competent evidence pertinently identifying the defendant with the transaction charged against him." Citing Green v. State (Texas Crim. App.), 31 S. W., 386; Munson v. State, 34 Texas Crim. Rep., 498, 31 S. W., 387;

Bowen v. State, 60 Texas Crim. Rep., 595, 133 S. W., 256; Lawrence v. State, 66 Texas Crim. Rep., 346, 146 S. W., 928. See also Reed v. State, 113 Texas Crim. Rep., 412, 22 S. W. (2d) 456.

Conceding that the evidence showed a probability or strong suspicion that the appellant was a participant in the commission of the burglary charged, does the evidence point to the guilt of the appellant with the cogency which the law demands to overcome the presumption of innocence and to exclude every reasonable hypothesis except the guilt of the accused? To sustain a conviction, suspicious circumstances short of the measure mentioned are not enough. We do not believe the evidence in this case measures up to the certainty required in cases dependnt wholly upon circumstantial evidence for a conviction, and so believing, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.