**Elmer Lavaughn FREEMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 63863.**

Court of Criminal Appeals of Texas, en banc.

March 9, 1983.

Rehearings Denied April 6 and July 20, 1983.

Ken McLean, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Alvin M. Titus and Rick Trevathan, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

Appeal is taken from a conviction for theft of property of the value of more than two hundred dollars ($200.00) but less than ten thousand dollars ($10,000.00). Punishment was assessed by the jury at ten (10) years' imprisonment and a fine of five thousand dollars ($5,000.00), probated.

In the two count indictment the appellant was charged with the theft of liquid fertilizer on or about August 17, 1978 and on or about August 21, 1978.

The jury convicted the appellant on both counts. The court granted a new trial and set aside the conviction based on count one. See Article 40.09, § 12, V.A.C.C.P. (1965), then in effect. The appeal is based on the conviction arising out of the second count alleging theft on or about August 21, 1978.

At the outset we are confronted with the challenge to the sufficiency of the evidence.

Kenneth Neal Smith was a truck driver for the Phillips 66 Company liquid fertilizer plant in Katy. He knew appellant Freeman when Freeman was a truck driver for another fertilizer company which had at one time kept its tanks on the Phillips 66 property in Katy. Smith recalled seeing the appellant in January, 1978, near Victoria. At the time appellant was in his blue and white Peterbilt truck with a blue tank.

He was "breaking in" a new driver named Phillip Howell.

About March 1, 1978, Smith saw Howell in a new Chevrolet pickup at the Phillips 66 plant in Katy. They talked about the pickup. Two days later Howell returned and he and Smith went into Houston to another fertilizer company for which Smith knew appellant and Howell hauled fertilizer. Howell permitted Smith to use the pickup for the weekend. Shortly thereafter, Howell offered to give Smith the pickup if Smith assisted him in stealing fertilizer from Phillips 66. Smith agreed and together they checked out the Katy plant. Thereafter, no action was taken until August. On August 16, 1978, after a phone call, Smith met Howell at the Rice Association Elevators in Katy about 11:30 p.m. Howell was in the blue and white Peterbilt. After midnight on August 17th, Smith and Howell went to the Phillips 66 plant. Smith used his key to the pump room and Howell's truck was filled with liquid fertilizer. Both wore gloves. Two nights later, August 19th, Smith and Howell repeated the operation. Again on August 21st more fertilizer was taken by Smith and Howell.

Smith related that he had last seen the appellant in January; that the appellant had not been present at the time of his conversations with Howell or the time of the thefts; that only he and Howell were "in cahoots" about stealing the fertilizer.

Apparently as a result of earlier difficulties and a lie detector test Smith had agreed to cooperate with law enforcement officers. The thefts on August 17th and 21st were under the surveillance of the officers. Smith stated he notified the officers about the August 19th plans, but apparently there was no surveillance on that date.

M.L. Scott, manager of the Phillips 66 plant, testified he came to the plant on August 17th and determined 6,014 gallons of liquid fertilizer were taken, it had a value of $4,500.00, and that on August 21st liquid fertilizer of the value of $4,420.00 was taken. Scott did not give permission to anyone for the fertilizer to be taken. Scott did not know Howell. He last saw appellant some two or three years before when the appellant worked for another company who had storage tanks on the Phillips 66 plant property.

E.G. Michel, license and weight trooper of the Department of Public Safety, testified on August 17, 1978, he stopped Howell outside of Hempstead in the 1975 Peterbilt truck shown to be registered to the appellant and issued a citation for overweight. He had been instructed to be on the "lookout" for the truck and to stop it and weigh it, which he did.

K.R. Jordan, detective with the Harris County Organized Crime Task Force, followed Howell in the early morning hours when he left the Phillips 66 plant on August 17th. After the truck stopped at Hillsboro, Jordan and fellow officer, Wayne Jose, proceeded in their vehicle to Chico and to appellant's residence and business location. Surveillance was established. Howell arrived about 6:10 a.m. He and appellant unloaded the liquid fertilizer into tanks located there.

On August 21st Jordan and Jose again followed Howell and again set up surveillance at appellant's residence in Chico. Howell did not arrive. Jordan heard the phone ring in appellant's residence and then saw appellant leave. Jordan went to Paradise, but observed only Howell leaving in the Peterbilt truck.

Ray Jones, another member of the law enforcement team, followed Howell on August 17th and 21st. On the 21st, while following, Jones observed Howell stop the truck and make a phone call. He followed the truck to Paradise but did not see it unloaded nor did he observe appellant.

Hal Dumas, Katy Police Department, and another officer followed Howell on August 21st to the business location of Preston Lowery in Paradise. Dumas observed appellant arrive at the location and help unload the truck. Later he saw appellant produce a big roll of bills and give some to Howell saying, "Here is a grand." Howell

stated he would be back that night with another load.

Preston Lowery was in the liquid fertilizer and pipe business in Paradise. He did business with appellant from time to time. During the summer of 1978, he depleted his stock of 10–34–0 liquid fertilizer and called the appellant, who sold him a small amount. Appellant told Lowery he did most of his business in South Texas, but at times had trucks coming home empty and could sell Lowery fertilizer at a lower freight rate. Lowery told appellant if he had a truck "coming in in the next little while, bring me some." Later Lowery noticed fertilizer in his tanks. When he spoke to appellant about it, appellant informed him that two loads had been delivered. Lowery found this to be true and paid the appellant in two installments.

Howell did not testify.

Leon Bates, Jr., testified for the defense that he had known appellant approximately seven years, that he had owned Equalizer Fertilizer located in Galena Park, that he often sold fertilizer to appellant and that appellant did hauling work for him. Bates sold his business but not his inventory. On August 12, 1978, he sold 95 tons of 10–34–0 liquid fertilizer to appellant for $12,000.00. He did not personally know when the fertilizer was "picked up" from the storage tanks in Galena Park because he lived in Longview at the time.

Appellant testified he was in the liquid fertilizer and feed business and in August, 1978, only Howell worked for him. He had a contract agreement to haul for Equalizer Company, but also hauled for other companies. He related that on August 12, 1978, he purchased liquid fertilizer from Bates. He told Bates he could not pick up the fertilizer right away and would have to sell it before he could pay for it. He also agreed to sell two loads of fertilizer to Lowery about August 14th or 15th. He instructed Howell to bring a load home when he was not otherwise busy hauling for other companies. There were three loads to be delivered from Bates. Two loads were sold to Lowery for which he was paid. One load was delivered to appellant's tanks on August 17, 1978. Appellant stated he handed Howell a pill bottle full of brass connections for a transmission air hose on August 21st at Lowery's place. Howell had called and informed him the truck was having air hose trouble. This, he testified, was what the officers probably saw him hand Howell. He denied the conversation with Howell attributed to him by Officer Dumas or handing Howell money.

Appellant denied any knowledge the liquid fertilizer came from Phillips 66, or that he participated in the thefts.

Appellant, as shown above, was indicted for the actual theft of the property pursuant to V.T.C.A., Penal Code, § 31.03(a) and (b)(1), and not for receiving stolen property pursuant to V.T.C.A., Penal Code, § 31.-03(a) and (b)(2). While the court charged abstractly on the law of parties, in applying the law to the facts the court submitted the case to the jury as if he were acting alone, despite appellant's timely objection.

Appellant did not participate with Howell in the actual appropriation of the alleged property. Clearly the evidence is insufficient to show that appellant acting alone had committed the theft of the liquid fertilizer as alleged in the second count of the indictment. The question remains whether appellant was a party to the crime. If appellant was guilty, it is as a party under V.T.C.A., Penal Code, § 7.02(a)(2). *Wygal v. State*, 555 S.W.2d 465, 468 (Tex.Cr.App. 1977).

Said § 7.02(a)(2) provides:

"(a) A person is criminally responsible for an offense committed by the conduct of another if:

"(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or . . . ."

In determining whether an individual is a party to an offense and bears criminal responsibility therefor, the court may look to events, during and after the commission of the offense. *Wygal v. State*,

supra; *Ex parte Prior,* 540 S.W.2d 723, 727 (Tex.Cr.App.1976); *Holloway v. State,* 525 S.W.2d 165 (Tex.Cr.App.1975); *Bush v. State,* 506 S.W.2d 603 (Tex.Cr.App.1974).

■ Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence. Circumstantial evidence may be sufficient to show that one is a party to the offense. *Wygal v. State,* supra; *Ex parte Prior,* supra; *Westfall v. State,* 375 S.W.2d 911 (Tex.Cr.App.1964).

In the instant case the testimony shows Howell was an employee of the appellant and was driving appellant's truck. Howell did not testify. Smith, however, testified that only he and Howell were in "cahoots" about the thefts. Appellant was not present when Smith and Howell discussed the thefts and was not present at the time of the commission of the thefts. There is no evidence to show that prior to the commission of the alleged theft that appellant acted with intent to promote or assist the commission of the offense, solicited, encouraged, directed, or aided others in the commission of the alleged offense. The evidence does show that appellant helped Howell unload fertilizer from his truck into the tank of a customer, Preston Lowery, on August 21, 1978, the date of the `alleged offense in the second count of the indictment. Apparently another load was delivered to Lowery, and earlier on August 17th, appellant helped Howell, his employee, unload fertilizer into a storage tank at his place of business in Chico. On August 21st appellant was seen to hand to Howell at Lowery's place what appeared to be a roll of bills and state "Here is a grand." This appears incriminating, but appellant was in the liquid fertilizer business and Howell was his only employee and authorized to drive his truck. Most of appellant's business was in South Texas. Appellant had purchased about three loads of fertilizer in Galena Park from Bates and had instructed Howell to bring the fertilizer home when he had the opportunity. Some of this testimony casts suspicion upon the appellant, but is it sufficient? It is clear that if appellant is

a party to the alleged offense as outlined in V.T.C.A., Penal Code, § 7.02, it is by virtue of circumstantial evidence.

■ Every circumstantial evidence case must necessarily be tested by its own facts to determine the sufficiency of the evidence to support the conviction. *Earnhart v. State,* 575 S.W.2d 551, 554 (Tex.Cr.App. 1979); *Stogsdill v. State,* 552 S.W.2d 481 (Tex.Cr.App.1977); *Moore v. State,* 532 S.W.2d 333 (Tex.Cr.App.1976); *Higgins v. State,* 515 S.W.2d 268 (Tex.Cr.App.1974); *Indo v. State,* 502 S.W.2d 166 (Tex.Cr.App. 1973). A conviction on circumstantial evidence cannot be sustained if the circumstances proved do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting to only strong suspicion or mere probability is insufficient. *Flanagan v. State,* 620 S.W.2d 591 (Tex.Cr.App.1981); *Bonds v. State,* 573 S.W.2d 528, 533 (Tex.Cr.App. 1978); *Stogsdill v. State,* supra; *Flores v. State,* 489 S.W.2d 901 (Tex.Cr.App.1973); *Kinkle v. State,* 474 S.W.2d 704 (Tex.Cr. App.1972); *Culmore v. State,* 447 S.W.2d 915 (Tex.Cr.App.1969); *Brock v. State,* 285 S.W.2d 745 (Tex.Cr.App.1956).

This court has the duty of insuring that no one is convicted of a crime except upon proof.

As Judge W.C. Davis wrote for the court in *Bonds v. State,* supra, at page 533:

"This Court has a duty of insuring that no one is convicted of a crime except upon proof beyond a reasonable doubt and in, a circumstantial evidence case, upon proof excluding all other hypotheses except appellant's guilt. *Easley v. State,* 529 S.W.2d 522 (Tex.Cr.App.1975)."

As to the matter of appellate review on convictions based on circumstantial evidence, this court in *Ysasaga v. State,* 444 S.W.2d 305, 308–309 (Tex.Cr.App.1969), wrote:

"Ordinarily the test on appeal is whether there was evidence from which the jury (advised of the restrictions which the law places upon them in condemning one on circumstantial evidence) might reason-

ably conclude that every reasonable hypothesis other than guilt was excluded.

" 'In criminal cases, a judgment of conviction, to be sustained on appeal, must be supported by evidence that produces a moral certainty of the guilt of the accused to the exclusion of every reasonable doubt. The evidence will be insufficient to sustain the conviction where, although not leaving the accused free from suspicion of guilt, it still fails to show his guilt to a moral certainty, so as to exclude all reasonable doubt.

" 'In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review the evidence in light of the presumption that the accused is innocent. The Court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged.' 24 Tex.Jur.2d, Evidence, Sec. 742, p. 422."

*Suff v. State,* 531 S.W.2d 814 (Tex.Cr.App. 1976); *Davis v. State,* 516 S.W.2d 157 (Tex. Cr.App.1974); *Earnhart v. State,* supra; *Stogsdill v. State,* supra; *Hollingsworth v. State,* 419 S.W.2d 854 (Tex.Cr.App.1967); *King v. State,* 396 S.W.2d 409 (Tex.Cr.App. 1965); *Ramirez v. State,* 289 S.W.2d 251 (Tex.Cr.App.1956).

In 5 Am.Jur.2d, Appeal and Error, § 821, p. 262, it is written:

" . . . And it has been held that where a conviction rests solely on circumstantial evidence, and there is substantial circumstantial evidence supporting the finding of guilt, this finding may nevertheless be reviewed by the appellate court as to whether that circumstantial evidence was equally compatible with an assumption of innocence of the accused."

██ We conclude that the evidence is insufficient to show that appellant was a party to the alleged offense under V.T.C.A., Penal Code, § 7.02.

The judgment is reversed and the prosecution ordered dismissed. See *Burks v.* *United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Bonds v. State,* supra.

TOM G. DAVIS and CAMPBELL, JJ., concur in the result.

TEAGUE, J., not participating.

### OPINION ON STATE'S MOTIONS FOR REHEARING

CLINTON, Judge.

Leave to file motion for rehearing was granted the State in these causes and they were consolidated in order for us to determine whether the "standard for appellate review" is the same for circumstantial evidence cases and direct evidence cases.

The question of sufficiency of evidence to sustain a state criminal conviction implicates the Fourteenth Amendment. *Jackson v. Virginia,* 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2785 n. 12, 61 L.Ed.2d 560 (1974), "announced . . . the constitutional minimum required to enforce the due process right" to be free from conviction except on proof beyond a reasonable doubt. The Court then reasoned:

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' *Woodby v. INS,* 385 U.S. [276,] at 282 [, 87 S.Ct. 483, at 486, 17 L.Ed.2d 362]. Instead, *the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.* See *Johnson v. Louisiana,* 406 U.S. [356,] at 362 [, 92 S.Ct. 1620, at 1624, 32 L.Ed.2d 152]. This familiar standard gives full play to the responsibility of the

trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law. [Footnotes omitted and emphasis added.]"

443 U.S. at 318–319, 99 S.Ct. at 2788–89.

■ Although *Jackson* was setting a standard for review of state convictions by federal courts, the due process requirements that it announced were based expressly on the Fourteenth Amendment. They are binding on the states and constitute a minimum standard for our sustaining a conviction. "Under [*In re*] *Winship,* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970),] which established proof beyond a reasonable doubt as an essential of Fourteenth Amendment due process, it follows that when such a conviction [that was obtained even when no rational trier of fact could have found guilt beyond a reasonable doubt] occurs in a state trial, it cannot constitutionally stand." 443 U.S. at 317–318, 99 S.Ct. at 2788–89. "[S]tate appellate review undoubtedly will serve in the vast majority of cases to vindicate the due process protection that follows from *Winship....*" 443 U.S. at 322, 99 S.Ct. at 2790.

■ It follows that circumstantial evidence should not be tested by an *ultimate* "standard for review" different from direct evidence; the standard in both kinds of cases is whether "any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." Accord *Griffin v. State,* 614 S.W.2d 155 (Tex. Cr.App.1981).

■ Still, we are unable to devise or discover any reason, compelling or otherwise, for abandoning the utilitarian "exclusion of outstanding reasonable hypotheses" analysis for *applying* the above "standard for review" in circumstantial evidence cases. By the nature of circumstantial evidence, in order to determine it rationally establishes guilt beyond a reasonable doubt, a process of elimination must be used. Illustrative is *Taylor v. State,* 653 S.W.2d 295 (Tex. Cr.App.1983). We there cited the *Jackson* "standard for review;" in actually assessing the evidence, no method *other than* a process of eliminating the guilt of others under the evidence could be fashioned to effectively conclude the evidence rationally established Taylor's guilt beyond a reasonable doubt. See also *Girard v. State,* 631 S.W.2d 162 (Tex.Cr.App.1982). Stated in the converse, if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding.

Moreover, scrutiny of the analysis suggested in the motions for rehearing (that the focus of our inquiry should be on "any evidence which could rationally support the verdict") reveals it to be functionally indistinguishable from that specifically rejected by the Supreme Court in *Jackson,* supra, as violative of the Fourteenth Amendment.

Finally, as the motions for rehearing persuasively argue, this Court's opinions have never held the circumstantial evidence *analysis* constitutes a different *standard for review* from that to be ultimately applied in direct evidence cases.* If the State's evi-

---

* It is true that some opinions of the Court have quoted language apparently originating from the pen of an author or editor of *Texas Jurisprudence* to the effect that in circumstantial evidence cases an appellate court will "review the evidence in light of the *presumption that the accused is innocent,*" 18 Tex.Jur. § 309, p. 432.

Literally and technically inaccurate, the statement is revealed as a writer's attempt to convey the notion that the State's burden of adducing proof beyond a reasonable doubt is but a conceptual corollary of the presumption of innocence, and a failure to produce that evidentiary quantum operates to absolve the appellant. [See *Hill v. State,* 118 Tex.Cr.R. 73, 38 S.W.2d 787 (Tex.Cr.App.1931); *Castro v.*

dence supports an inference other than a finding of the essential elements of the crime, then no trier of fact could *rationally* find the accused guilty *beyond a reasonable doubt*—and this is true irrespective of the character of the evidence.

In sum, we are convinced there are no better analytical guidelines for assaying whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt in any given conviction had upon circumstantial evidence than those we currently employ.

The State's motions for rehearing are overruled.

ONION, P.J., concurs in result.

MILLER and CAMPBELL, JJ., not participating.

McCORMICK, Judge, concurring.

I agree that the standard for review in any case is *whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.* I write to emphasize that application of the "exclusion of outstanding reasonable hypotheses" analysis is, as stated by the majority, one criteria which may be applied in arriving at the answer to the ultimate result, but it should not be considered an element of that ultimate standard. And as the majority emphasizes, the method of analysis does not change this standard of review.

Logic dictates that if there is a "reasonable hypotheses" other than the guilt of the accused, then it cannot be said that the guilt has been shown "beyond a reasonable doubt." In *Hankins v. State,* 646 S.W.2d 191 (Tex.Cr.App.1983), we recognized that direct and circumstantial evidence were to be treated with equal dignity. Thus, any effort to weave into the standard of appel-

late review any exception or difference or special treatment for one type of evidence or the other will fail for lack of logic.

Lastly, in applying this standard to the cases before us, the final outcome is the same. Therefore, I concur in the overruling of the States' motions for rehearing in each case.

TOM G. DAVIS, W.C. DAVIS and TEAGUE, JJ., join in this concurrence.

State, 115 Tex.Cr.R. 291, 29 S.W.2d 760 (Tex. Cr.App.1930); *Jones v. State,* 28 Tex.App. 42, 11 S.W. 798 (Tex.Cr.App.1928) (Opinion on State's Second Motion for Rehearing); *Jackson v. State,* 101 Tex.Cr.R. 169, 274 S.W. 585 (Tex. Cr.App.1925); *Mathis v. State,* 100 Tex.Cr.R. 509, 272 S.W. 204 (Tex.Cr.App.1925); *Fitts v. State,* 98 Tex.Cr.R. 146, 264 S.W. 1006 (Tex.Cr. App.1924); *Wales v. State,* 86 Tex.Cr.R. 183, 217 S.W. 384 (Tex.Cr.App.1919); *Wilkie v. State,* 83 Tex.Cr.R. 490, 203 S.W. 1091 (Tex.Cr. App.1918); *Hampton v. State,* 1 Tex.Ct.App. 652 (1877), which are cited for the mentioned inaccurate proposition at 24 Tex.Jur.2d, § 742, p. 425, n. 13 (1961).]