**Jimmy Alfonso AUTRAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–90–072 CR.**

Court of Appeals of Texas, Beaumont.

May 21, 1992.

**808**

George Barron, Orange, for appellant.

Steve Howard, Dist. Atty., Donna O'Shea, Asst. Dist. Atty., Orange, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

This case is on appeal from a conviction for the possession of a controlled substance, namely, cocaine. The case was tried on February 19, 1990 before a jury in the 260th District Court of Orange County. The Appellant entered a plea of not guilty. Appellant was found guilty, sentenced to 20 years in the Texas Department of Criminal Justice and assessed a fine of $10,000. The Appellant was sentenced by the trial court on February 27, 1990, in accordance with the jury's verdict. Appellant filed his motion for new trial but the motion was denied on March 28, 1990. Thereafter, on April 9, 1990, Appellant filed his written notice of appeal.

Appellant advances two points of error. The Appellant contends that the evidence was insufficient to support the conviction and that his motion to suppress should have been granted.

In order to discuss each of the Appellant's points of error this Court is required to do an extensive factual recitation from the record. The pertinent facts are as follows: that on October 2, 1989, at about 1:45 a.m., the Appellant was stopped by a Deputy Bailey for a traffic violation. The Appellant was the driver. Appellant was driving a 1984 4-door Chevrolet Impala. Appellant was accompanied by his 19-year-old son. The Appellant and his son were enroute from Houston to his home in Miami. The Appellant and his son had spent several days in Houston before the return trip. The purpose of the trip was for the Appellant to receive an unspecified amount of cash and deliver the money in Miami. The amount of money turned out to be approximately $490,000.

During their stay in Houston, the Appellant released the car to two men who had

to put the money in the car. This release to two men was done on Sunday before their departure. The Appellant gave the men the spare key box containing a key to the automobile. When the car was returned, the spare key box was on the front seat of Appellant's car. Appellant stated that the spare key box was empty upon his examination of it upon the return of the car.

When the car was returned, the Appellant and his son left Houston for Miami. They stopped at a service center to rest and also to replace a fuse. The Appellant went into the service center and the son stayed in the car to replace the fuse which was located in the front seat area of the car.

While enroute to Miami on Interstate 10, the Appellant was stopped for failure to maintain his vehicle within a single marked lane. The Appellant was actually traveling west on Highway 12. The deputy observed the vehicle as it crossed the center stripe of the highway. The deputy pulled his vehicle behind the Appellant's vehicle, whereupon the deputy activated his emergency lights and take-down lights. The deputy followed the vehicle and observed the head of someone going up and down. Also, the deputy stated that he observed the driver lean across the front seat area to open the glove box. The Appellant continued to travel for over one-half mile before he came to a stop. The driver continued to lean over even after the car had stopped. The road was a two-lane highway with improved shoulders and there was nothing to prohibit the driver from pulling over during the one-half mile distance he continued to travel after the deputy had engaged his lights.

After being stopped, the Appellant identified himself by his Florida driver's license. The Appellant admitted that he owned the vehicle and showed the vehicle identification card. The Appellant appeared disoriented because he thought that he was in Louisiana on Highway 12. Appellant was mistaken. The Appellant consented to the deputy's request to search the inside and trunk area of the vehicle. The deputy observed a large styrofoam cooler on the floorboard in the back seat area right be-hind the driver's seat. Also in the back seat were other items. The Appellant opened the trunk. Inside the trunk was a large, 48–quart ice chest, a cardboard box, a shopping bag, and two suitcases. The deputy attempted to open the ice chest but then the Appellant slammed the trunk shut.

The Appellant and his son were arrested. The Appellant was charged with failure to stay within a single marked lane. The Appellant's son was arrested for public intoxication. The Appellant was not intoxicated and neither did he give the appearance of being intoxicated.

Pursuant to departmental procedure, later the deputies began a vehicle inventory. This search was conducted in the early hours of the morning when it was still dark. The deputies started with the trunk and found large sums of U.S. currency in the ice chest, the box and a plastic bag at which point they decided to stop the inventory search. The deputies radioed in for a tow truck which the Sheriff's Department provided. The Appellant's vehicle was towed in.

At the Sheriff's Department the inventory-search was continued. The money and contents of the trunk were secured. The officers proceeded to audit the passenger side of the vehicle. The Jefferson County Crime Lab was called in and its personnel brought a solution to wash the money since there was some white, powdery substance on the money. The Sheriff's Department wanted to test this white, powdery substance for identification purposes. The money was counted at the Sheriff's Department.

The search of the vehicle was continued with the assistance of Detective Hargrave and Lieutenant Westbrook. The second inventory search began some time after 6:00 a.m. Detective Hargrave stated that he found a small black plastic key box with a magnet on one side of it and it was attached to the underside of the driver's seat. The box was located for easy access for anyone who was sitting behind the steering

wheel. When the detective looked under the seat, the box was clearly visible to him.

Inside this box was a white, powdery substance which was identified as cocaine. The Appellant admitted he was the owner of the spare key box which was a black box.

Also, a Detective Dorsey was called out about 6:00 a.m. on October 2, 1989. Detective Dorsey assisted in the counting of the money that had been found in the trunk of the Appellant's vehicle. Furthermore, he stated that a white, powdery substance was on the money. He conducted the washing of the money after being instructed by the Crime Lab as to the proper procedure of how it was done. The wash was submitted to the Crime Lab and it was analyzed and found to contain cocaine. Most of the white, powdery substance was found on the currency in the cardboard box. The Appellant admitted on cross-examination that the contents in the trunk of the vehicle, such as the luggage and the box, were his.

*Insufficiency Issues*

The standard of review for sufficiency of the evidence on appeal is the same for direct and circumstantial evidence cases. The standard is to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Ransom v. State,* 789 S.W.2d 572 (Tex. Crim.App.1989); *Carlsen v. State,* 654 S.W.2d 444 (Tex.Crim.App.1983) (Opinion on rehearing); *Freeman v. State,* 654 S.W.2d 450 (Tex.Crim.App.1983) (Opinion on rehearing); *Denby v. State,* 654 S.W.2d 457 (Tex.Crim.App.1983) (Opinion on rehearing); *Wilson v. State,* 654 S.W.2d 465 (Tex.Crim.App.1983) (Opinion on rehearing). This standard was announced in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh. den.* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979) by the U.S. Supreme Court. In *Jackson, supra,* the court stated:

[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt." [citations omitted] Instead, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

The Appellant before this Court insists that his conviction, based on circumstantial evidence, cannot stand "if the circumstances do not exclude every other reasonable hypothesis except that of guilt of the defendant." *See Humason v. State,* 728 S.W.2d 363 (Tex.Crim.App.1987). The Appellant relies heavily on *Humason, supra.* The Appellant asserts that under *Humason, supra,* the State is required to prove that the accused exercised care, control and management over the contraband and that he actually knew he possessed the contraband. Furthermore, the Appellant asserts that mere presence in the vicinity of the controlled substance by him is not enough. *See Humason, supra.* Also, Appellant contends, under *Humason, supra,* that strong suspicion or mere probability is not enough. Likewise, the Appellant argues that independent facts and circumstances must be shown which affirmatively link him to the substance in such a manner that it can be concluded that he knew about the substance and had control over it. *See McGoldrick v. State,* 682 S.W.2d 573 (Tex. Crim.App.1985).

The Appellant insists that the evidence as presented by the State is insufficient to sustain his conviction on the basis that someone else had equal access to the driver's seat; namely, his son. The Appellant supports his argument through his testimony that after leaving Houston on the date of the offense, his automobile map light broke and he pulled into a service center to replace it. While he was inside the store

shopping, his son was left in the car to replace the fuse. The fuse box was located in the inside front of the vehicle near the emergency brake. His son was alone in the vehicle with the empty key box. The Appellant's contention is that his son placed the cocaine in the key box and put it under the driver's seat when the son was replacing the fuse and the Appellant was in the store.

■ It is well settled in our system of jurisprudence that the triers of fact are the judges of the credibility of witnesses. The jury is empowered to believe or not to believe witnesses or any portion of their testimony. *See Esquivel v. State*, 506 S.W.2d 613 (Tex.Crim.App.1974).

In reviewing the Appellant's testimony, the jury had a wealth of evidence calling his credibility into question. In addition to the above stated facts, the jury could consider that the Appellant had purchased his vehicle in Chicago and driven it to Florida, demonstrating that he could drive cross-country without problems. Also, the Appellant testified that he had been hired to go to Houston to pick up a sum of money for which he was to be paid $10,000. The Appellant testified that he had taken his $10,000 out of the cooler and put it in the glove box of the car. No money was found in the glove box of the car when the inventory was conducted.

The Appellant admitted he knew the appearance of cocaine. But the Appellant denied even looking inside of any of the other containers in the trunk except the ice chest.

Appellant denies that he took more than 25 yards to stop his car as he was leaned over in the front seat "looking for his registration." As to the ownership of the money found in the trunk of the car, the Appellant made two contradictory statements. At the scene, the Appellant denied even knowing about the money, as well as to whom it belonged, when he was questioned by the deputy. At trial, the Appellant admitted that he was aware that the cardboard box, ice chest and shopping bag were in the trunk of the car. The jury had the right to weigh these various statements.

■ The burden rests with the State to prove that the Appellant had possession of the controlled substance. In order to confirm the illicit possession of a controlled substance the State must prove two elements: (1) that the Appellant exercised care, control and management over the contraband, and (2) that the Appellant knew that the matter possessed was contraband. *See Guiton v. State*, 742 S.W.2d 5 (Tex. Crim.App.1987). These elements may be proved circumstantially. *Control* may be shown either by actual or constructive possession, and *knowledge*, being subjective, must usually be inferred to some extent. An affirmative link to the accused to the contraband can be established by showing additional facts and circumstances which indicate the Appellant's knowledge and control over the contraband. *See McGoldrick v. State*, 682 S.W.2d 573 (Tex.Crim. App.1985). Among such additional facts which may establish the affirmative link are: (1) the contraband was conveniently accessible to the accused; (2) the accused was the driver of the automobile in which the contraband was found; (3) the contraband was found on the same side of the car seat as the accused was sitting; and (4) the accused was the owner of the place where the contraband was found. *See Guiton, supra.* In the case at bar, each of the above mentioned affirmative links existed to connect the Appellant to the contraband.

■ In examining the sufficiency of the evidence in a circumstantial case, the reviewing court has only to conclude that a reasonable jury could have rejected Appellant's version of the facts. In this case the jury was required to judge the credibility of witnesses and weigh the evidence. Based upon the testimony presented to the jury, the jury was empowered to reject the Appellant's map light repair story as a fabrication to place blame on his son. We hold there were sufficient affirmative links to the cocaine to find the Appellant guilty of possession. We overrule point of error number one.

### The Motion to Suppress Issue

The Appellant asserts that the introduction into evidence of items located in his car during an inventory search was error. Namely, the items complained of were: the money in the trunk laced with cocaine and the cocaine found in the spare key box under the driver's seat. Appellant contends that these items were clearly outside the parameter of the inventory search. *See Gill v. State,* 625 S.W.2d 307 (Tex. Crim.App.1980).

We hold that *Gill, supra,* is not applicable to the case at bar. In *Gill, supra,* the police officers entered the trunk after having a wrecker driver rip the back seat out of the vehicle to provide access to the trunk. In the case at bar, the Appellant consented to the deputy looking inside the vehicle and the trunk. As to the trunk, the Appellant, himself, opened it with his key. There was no forced entry into the trunk by the deputy as occurred in *Gill, supra.* Also, the Appellant relies on *Gill* as an authority for the proposition that the containers in this case, specifically the key box, were outside the scope of a lawful inventory search. Again, we hold that the analysis made by the Court in *Gill, supra,* is not applicable to the case at bar.

In *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), the United States Supreme Court stated that the policies behind the warrant requirement, as well as the related concept of probable cause, are not implicated in an inventory search. The Court found that an inventory search served to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger. The Court continued to state that if there was no showing that the police, who were following departmental procedure, acted in bad faith or for the sole purpose of investigation; then the police, before inventorying a container, are not required to weigh the individual's right of privacy against the possibility that it might serve as a repository for dangerous or valuable items. Such an inventory helps to avert any dangers to or unjustified claims against the police.

■ The reasonableness of any police or governmental activity does not necessarily or invariably rest on the existence of alternative "less intrusive means". Police inventory searches conducted in good faith according to police departmental procedures satisfy the Fourth Amendment.

In the case at bar, the evidence complained of by the Appellant was clearly discovered during a lawful inventory search. The testimony of Deputy Bailey clearly shows that the Sheriff's Department had an established policy regarding the inventorying of vehicles which included the itemization of the contents on inventory sheets. The search of the suitcases, the items in the trunk, the bags, the items in the car were conducted as an inventory according to departmental policy. The inventory list consisted of over 100 inventory cards. The first deputy conducted his search of the vehicle between the hours of 3 and 5 a.m. (it was still dark at the time). No flashlight was used to conduct the search.

After daylight, a second inventory was conducted by two other independent sheriff's deputies. They were instructed to complete the inventory and also to check Deputy Bailey's inventory list. The list made by Deputy Bailey was used by the other deputies to check off the items already removed from the vehicle. These deputies checked to see that everything in the car was carefully listed. It was during the course of this inventory that one deputy, Sergeant Hargrave, spotted the small black key box under the driver's seat. This deputy had conducted a follow-up search on one other occasion. Hargrave was following departmental procedures.

■ Point of error number two has been rebriefed by the appellant. The primary issue before us in this matter is whether the $500,000 in United States currency laced with the cocaine found in the trunk of the appellant's vehicle and cocaine found inside a magnetic key container attached to the bottom of the driver's seat were properly admitted into evidence as items discov-

ered through a valid inventory procedure. It must be borne in mind that the so-called inventory search was really a continuation of the search begun on the highway when the accused's car was stopped for adequate reasons. The search on the highway could not be concluded because of conditions and lack of law enforcement officials. In light of *Heitman v. State*, 815 S.W.2d 681 (Tex. Crim.App.1991), the question of the validity of the inventory conducted on the appellant's vehicle must be determined pursuant to Article I, § 9 of our State Constitution. The question is whether this section of the Constitution provides greater protection for the individual than the protection afforded under the Fourth Amendment of the United States Constitution. It is noteworthy that the Court of Criminal Appeals in *Heitman* while holding that an "independent interpretation" is henceforth a function of the courts, it also reaffirmed the holding in *DeBlanc v. State*, 799 S.W.2d 701 (Tex.Crim.App.1990) to the extent that briefs submitted in support of state constitutional issues would not be adequate without appropriate argument or authorities. Importantly, the principle of *stare decisis* upon which the cornerstone of our judicial stability is founded has not been abandoned.

### Pre–Heitman

The historical development of the decision of our Court of Criminal Appeals to adopt the interpretations of the United States Supreme Court on issues of search and seizure is set out quite well in *Heitman, supra*. The evolution of the self-imposed limitation began with *Brown v. State*, 657 S.W.2d 797 (Tex.Crim.App.1983) wherein the Court at that time was squarely presented with the issue of independent interpretation. The Court in *Brown, supra*, held that Article I, § 9, and the Fourth Amendment were in all material aspects the same. There followed the decision in *Osban v. State*, 726 S.W.2d 107 (Tex.Crim. App.1986) ruling that the State's Article I, § 9 would be henceforth interpreted in harmony with the United States Supreme Court's opinions relating to the Fourth Amendment. It must be noted that the

appellant, himself, recognized this principle of *stare decisis* in the pre-*Osban* cases.

However, appellant contends that *Gill v. State*, 625 S.W.2d 307 (Tex.Crim.App.1980) is the controlling case in this area of law with respect to the search of the trunk of appellant's vehicle, and *Gill's* principles apply to the search which discovered the one inch by three inch spare key box. Also, the appellant takes note that *Gill* was cited with approval by the Court of Criminal Appeals in *Heitman*. The appellant's reliance on *Gill* for the proposition that his vehicle was illegally searched is a misconstruction of the holding in that case. In *Gill*, the Court acknowledged the validity of inventory searches, citing *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The United States Supreme Court stated in *Opperman* that inventory searches are valid when vehicles are impounded provided local police departments follow a routine practice of inventorying the vehicle's contents. These procedures were developed in response to three distinct needs: (1) for the protection of the owner's property while it remains in policy custody; (2) for the protection of the police against claims or disputes over lost or stolen property; and (3) for the protection of the police from potential danger.

Importantly, appellant gave permission to open and search the trunk when the vehicle was still on the public highway. This permission to enter and search the trunk distinguishes this case from *Gill, supra*. The reasonableness of an automobile search can be justified by the surrounding circumstances. In addition to the consent and permission given, the appellant's own acts justified the search of the closed trunk.

The Supreme Court went on to say that inventory searches are not conducted to discover evidence, but are conducted in accordance with established police department rules and policies that occur whenever automobiles are impounded to satisfy the three salutary needs listed above. A permissible inventory search of an automobile need not be predicated upon the same principles and requirements of showing of

probable cause or obtaining a search warrant. It exists primarily for the purpose of satisfying the caretaker's responsibility when a police officer has lawfully impounded an automobile. It is important to acknowledge that an inventory search of an automobile is not based upon probable cause. A correct inventory search is done usually in accordance with a standard inventory form prepared pursuant to standard police procedure. The police officer logs the inventoried contents of the vehicle onto the form. Because the officer or agent is doing nothing more than taking stock of loose items of personal property found in the vehicle, items of personal property found in plain view or in unlocked compartments of the vehicle may be seized. Also, seizure of items found in the unlocked trunk of the automobile is permissible. The fact that the officer in *Gill, supra,* having lawful custody of the car had no keys to open the locked trunk and later engaged the services of a wrecker driver to remove the rear seat of the vehicle to gain entry into the locked trunk made a meaningful distinction from the case at bar. This action, as clearly noted by the Court, was "forcible entry", totally outside the limits of a valid, permissible inventory search.

Subsequent to *Gill,* our Court of Criminal Appeals had occasion to deal with the factually distinguishable situation wherein the officer's possession of the keys to an automobile trunk gave him ready access to the trunk of the vehicle without forcible entry. *Stephen v. State,* 677 S.W.2d 42 (Tex.Crim.App.1984). In *Stephen,* the Court distinguished the facts of that case from *Gill* and noted that the law officers had not forced their way into the trunk of the car. The *Stephen* Court held that the State satisfied its burden of proof concerning the inventory procedure by and through the testimony of officers that an inventory policy existed and that the policy was followed, there being no need to introduce into evidence a written inventory.

In the instant case, there was no forcible entry as in *Gill, supra.* As a means or method of protection against possible future claims of theft of property, the peace officers properly conducted an inventory of the trunk. Importantly, when a proper inventory search is conducted, the police may search and inventory any container found in the vehicle as a result of this search. *Stephen, supra.* All that is required is that the police follow departmental policies. In *Kelley v. State,* 677 S.W.2d 34 (Tex. Crim.App.1984), the Court held in language almost identical to that in *Stephen,* that *Gill* was factually distinguishable from the case in which the officer had obtained possession and control of the keys to the trunk of an automobile. In light of the factual background in *Gill,* and the subsequent decisions in *Kelley* and *Stephen,* reliance on *Gill* for the contention that entry into the trunk of an automobile was violative of Article I, § 9 of our state constitution is inappropriate.

### The Spare Key Container

Again, on this issue of the key container the appellant relies heavily on *Gill* for the proposition that opening and entry were prohibited into the one inch by three inch key box found in the passenger compartment. The box was attached to the driver's seat. Appellant states that the opinion in *Gill* holds that the primary function of an inventory was to take stock of loose personal items found within a vehicle. The Court dealt mainly with the question of entry into the trunk of a car. Again, the reliance placed by the appellant on *Gill,* is misplaced. Importantly, it must be noted that appellant does not question the legal premise establishing the concept of an inventory search. Implicit in appellant's arguments is the recognition that our law has long acknowledged the validity of such entry into the personal property items of an individual under arrest. Evidence of criminal activity is to be preserved. The appellant does not argue that less intrusive means would have had the effect of adequate protection for both the police and the individual citizen. It is important to acknowledge this case scenario is quite illustrative of the need to fully protect the interests of the individual and the need to adequately protect the police from unjust

claims of theft and misappropriation. The key box could have contained very valuable jewels or gems which needed to be carefully inventoried and safeguarded.

The facts before us are that the appellant was arrested, and with the subsequent arrest of the passenger (appellant's son), the police under all the surrounding circumstances had no choice but to impound the vehicle and to later conduct an inventory search. This conclusion is especially true considering the very large sum of money in cash that was discovered, potentially subjecting the law enforcement agency to a tremendous liability claim.

It is very clear that if no inventory search had been conducted in this situation and cash had been left in the trunk of the car that there would have been insufficient security to protect the interests of appellant or the police. Again, appellant contends that the opening of the spare key box was totally outside the limits of the search and seizure and the inventory. Again, the facts clearly show that when the appellant was arrested there was no other way to protect the appellant's car from vandalism or break-in that could have occurred had the car been left unattended or abandoned on the public highway at night. With the subsequent arrest of the appellant's son for public intoxication, this situation left the police with no choice but to provide safekeeping measures for this automobile and any goods or valuable items that may have been left inside.

■ The appellant does not attack the public intoxication offense charged to his son. He only questions the fact that the police found a spare key box under the driver's seat of the impounded car and opened the same. Appellant contends that such discovery by the police while doing the inventory search was beyond the limits allowed by the inventory search. At the pre-trial hearing on the motion to suppress, the appellant did not level any challenge to the officer's testimony that the passenger was, in fact, intoxicated. Nor did the appellant make any reference to his son as being not intoxicated or make any contentions with respect to allowing his son to

drive the automobile. The appellant merely states at the pre-trial hearing that the search was illegal and the illegality was based solely on the assertion that the inventory search was beyond the scope of proper inventory. We observe and affirm that the doctrine of inventory search is applicable when the authorities have properly come into possession of belongings or containers of the arrestee. Then the authorities must inventory the contents of the containers of the arrestee. *See and compare Moberg v. State*, 810 S.W.2d 190 (Tex. Crim.App.1991).

■ It is a general rule that an appellate court will not consider an error which counsel for the accused did not call or urge to the trial court. Seemingly at the pre-trial suppression hearing, the appellant took the position that the arrests of himself and his son, the passenger, were not subject to challenge. Nor did the appellant object on that basis at trial.

■ Because the safeguards of the inventory search had been clearly defined and followed, such safeguards afford salutary protection to the police agency enforcing the laws of our state, as well as for the individual citizen. We conclude that our Texas Constitution was not violated. In view of the large sum of $500,000 in cash which was laced with cocaine, coupled with appellant's actions, we determine that the opening of the key box was permissible. This determination is valid, we think, because, inter alia, the inventory proceeding was really a continuation of the lawful search begun on the highway. The stopping of appellant's vehicle was not a pretext. We overrule point of error number two.

A recognized and legitimate purpose of an inventory is to protect the law enforcement personnel from claims of misappropriation of property or claims of losing property. It seems reasonable to state that the opening of closed containers such as the one in this case would militate against such claims of misappropriation or loss. A reasoned approach, it seems, would be that if an inventorying law officer carefully inventoried a brief case or even a smaller con-

tainer and set out in detail the contents thereof, such a detailed inventory would, it is submitted, be an insulation against a later claim that expensive, valuable jewelry was in the brief case or the container. In this case the container was quite small and a detailed and careful inventory of the same would reasonably demonstrate that the items and contents shown on the inventory took up, occupied and exhausted the space within the small container. Therefore, logically, a fabricated claim would be less sustainable if sustainable at all. Thus, *a fabricating claimant would be discouraged and, perhaps, defeated* in the filing of an unmerited claim.

Under the totality of the surrounding circumstances it is perceived that the peace officers were justified in conducting an automobile inventory. It must be emphasized that about $490,000 was found in the vehicle's trunk. The money was partially covered with a white, powdery dust. Portions of the $490,000 were "washed". The "wash" later proved the money was covered with cocaine in a dust form. The large sum of dusty money, coupled with the situation where both occupants of the vehicle were under arrest, justified a meticulous inventory since the Appellant's car had to be impounded. Several officers participated in the inventory. This multi-officer conducted inventory would militate against fabricated claims. It further appears correct to conclude that closed containers encountered during the automobile search could also be searched. The privacy expectation or interest in closed containers located as was this one inch by three inch key box are to yield to the scope of the automobile search and more especially to the search of the passenger compartment. We quote from *California v. Acevedo,* —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) at ——, 111 S.Ct. at 1991:

> Until today, this Court has drawn a curious line between the search of an automobile that coincidentally turns up a container and the search of a container that coincidentally turns up in an auto-

mobile. The protections of the Fourth Amendment must not turn on such coincidences. We therefore interpret *Carroll*[1] as providing one rule to govern all automobile searches. The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained. (Footnote added)

We affirm the judgment of the trial court.

AFFIRMED.

BURGESS, Justice, concurring.

I reluctantly concur. I concur because while our Texas Court of Criminal Appeals in *Heitman v. State,* 815 S.W.2d 681 (Tex. Crim.App.1991) has reserved the right to interpret TEX.CONST. art. I, § 9, we have no such interpretations as of yet. Therefore, whether this particular inventory search, in general, and the search of the key box, in particular, is unreasonable under our state constitution is an open question.

The entire question of whether the police may open closed containers within an automobile in order to inventory them is certainly subject to debate and unanswered insofar as our state constitution is concerned. While the protection of police from claims of misappropriating or losing property might very well be a recognized and legitimate purpose, that purpose must be weighted against each citizen's right to privacy and the right to be free from unreasonable searches. Recently in *Davis v. State,* 829 S.W.2d 218 (Tex.Crim.App.1992) the court held the search of a matchbox in a *Terry*[1] stop violative of article I section 9 of the Texas Constitution since it was unreasonable for two armed police officers to fear a razor blade that might be contained in a matchbox. Then, arguendo, an officer's fear of claims of misappropriation or loss of property from a key box may not justify the inventory of the key box. If the citizens are to be secure from unreasonable searches, then perhaps directing the offi-

---

1. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

cers to stop inventories at closed containers is an appropriate line to draw under our state constitution. As noted above, this is ultimately a matter for the court of criminal appeals to decide. Hopefully it will grant appellant's petition for discretionary review on this matter.

WALKER Chief Justice, concurring.

I also concur with the opinion of Justice Jack Brookshire.

Justice Burgess, in his concurrence, correctly addresses the problem generated by *Heitman v. State*, 815 S.W.2d 681 (Tex. Crim.App.1991) by saying, "... we have no such interpretation (from the Court of Criminal Appeals) as of yet." (parenthetical portion mine).

It is not my intent to be critical of the *Heitman* opinion for it is indeed a scholarly effort in explaining why state courts are not bound by that lower limit set by the United States Constitution. However, Presiding Judge McCormick, in his one paragraph dissent, nails the problem left open in *Heitman* by suggesting that the majority provides no formula for guidance. *Heitman, supra* at 691.

By adopting the doctrine of "independent state grounds," without directions, the fourteen courts of appeal have been parachuted into the Okefenokee Swamp, at night, without a compass.

My true concern comes from the *Heitman* language stating:

State courts have thus been considered "laboratories" of constitutional law. State courts have the opportunity to experiment with constitutional rights and lay potential guidelines for future constitutional decisions of not only state courts but the Supreme Court as well.

*Heitman, supra* at 686.

Query: If the U.S. Constitution, through and guaranteed by the Fourth and Fourteenth Amendments, sets the lower limit or bottom line protection against unreasonable searches and seizures, pray tell why any state court would choose to further restrict law enforcement by establishing yet a more liberal interpretation through

our State Constitution. The question deserves a more credible answer than, "Well, we just do it because we are 'laboratories' of constitutional law and therefore, we can."

It is humbly suggested that should such needed guidelines be established, that consideration be given to requiring each court, when faced with the question of, "Should we rise above those protective shields guaranteed by, through and under the United States Constitution," to give clear and articulable reasons as to why, under the particular case at issue, a more expansive protection of individual rights is appropriate.

I respectfully offer this concurrence.